Carter Anthony FERRY, Appellant,

v.

CUNDIFF STEEL ERECTORS,
INC., Appellee.

No. 2005–CA–002304–MR.

Court of Appeals of Kentucky.

Dec. 8, 2006.

Rehearing Denied March 5, 2007.

James W. Dunn III, Connelly, Kaercher
Law Offices, Louisville, KY, for Appellant.

James U. Smith III, Smith & Smith,
Attorneys, Louisville, KY, for Appellee.

Before BARBER and VANMETER, JUDGES; KNOPF,[1] Senior Judge.

## OPINION

WILLIAM L. KNOPF, Senior Judge (Assigned).

The primary focus of this appeal is whether damages for future wages (front pay) may properly be included within the statutory definition of "actual damages" available under KRS 342.197 which prohibits discrimination against employees who file workers' compensation claims. Appellant Carter Ferry argues that the trial judge abused her discretion in refusing to submit his claim for future lost wages to the jury. Ferry also asserts that the trial court erred in deducting his union disability retirement benefits from his claim for back pay. Review of both federal and state caselaw in the area of discrimination statutes convinces us that the denial of his front pay claim constituted an abuse of discretion and that it was error to decline to apply the collateral source rule to his back pay claim.

The facts are neither complex nor in substantial dispute. For approximately ten (10) years, Ferry worked as an at-will employee of appellee Cundiff Steel Erectors, Inc. (Cundiff). In December 2003, he injured his back in the course of his employment and prosecuted a claim for workers' compensation benefits. After his dismissal by Cundiff on April 4, 2004, he filed this action pursuant to KRS 342.197 in Jefferson Circuit Court. By pre-trial order entered July 28, 2005, the trial court ruled that Ferry was not entitled to an award of punitive damages; to an order rescinding his termination; or to an order reinstating his employment. That same order also stated that Ferry "shall be pro-

hibited from offering any evidence or testimony" in support of such claims. In a separate order entered the same date, the trial judge limited Ferry's damages to back lost wages, reduced by workers' compensation benefits and any amounts received during the time period from comparable employment, and prohibited him from offering any evidence or testimony as to additional damages not specifically allowed by statute.

The jury ultimately awarded Ferry $76,771.08 in lost wages and benefits, plus interest, costs and attorney fees. That judgment has subsequently been satisfied. Thus, the only issues presented for our review are the propriety of the pre-trial orders concerning Ferry's claim for front pay and the exclusion from his award of amounts received pursuant to his union disability plan.

In *Firestone Textile Co. Div. v. Meadows,* 666 S.W.2d 730 (Ky.1983), the Supreme Court of Kentucky held that the discharge of an at-will employee may be unlawful if it violates constitutionally protected rights implicit in a statute or public policy established by legislative determination. Recognizing that the right to pursue workers' compensation benefits falls within that public policy criterion, the Supreme Court concluded that in order to provide a remedy for such wrongful termination, a discharged employee "has a cause of action for retaliatory discharge when the discharge is motivated by the desire to punish the employee for seeking the benefits to which he is entitled by law." 666 S.W.2d at 734. With the enactment of KRS 342.197, the General Assembly codified the *Firestone* holding:

(1) No employee shall be harassed, coerced, discharged, or discriminated

---

1. Senior Judge William L. Knopf sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

against in any manner whatsoever for filing and pursuing a lawful claim under this chapter.

. . . .

(3) Any individual injured by any act in violation of the provisions of subsection (1) or (2) of this section shall have a civil cause of action in Circuit Court **to enjoin further violations, and to recover the actual damages sustained by him,** together with the costs of the law suit, including a reasonable fee for his attorney of record. [Emphasis added.]

Both parties to this appeal agree that in construing what is encompassed by the terms "to enjoin further violations" and "to recover actual damages sustained," it is instructive to examine KRS 344.450, the Kentucky Civil Rights Act, as it contains identical terminology regarding available remedies.

In *Brooks v. Lexington–Fayette Urban County Housing Authority,* 132 S.W.3d 790, 806 (Ky.2004), the Supreme Court recently had occasion to address the remedies of reinstatement and front pay in the context of KRS 344.450:

Reinstatement is an equitable remedy. In essence, reinstatement functions as an injunction issued by the trial court that orders the defendant-employer to rehire the plaintiff-employee after she has prevailed in an unlawful discrimination case under the KCRA. Thus, the power to order reinstatement appears to fall within the trial court's power to "enjoin further violations" under KRS 344.450. In the context of this case, this means that the decision whether to order reinstatement is an issue for the trial court and not the jury. This is true for an award of front pay as well, because "front pay" is "money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." In other words,

front pay either supplements the equitable remedy of reinstatement or acts as a substitute for it, though reinstatement remains the preferable remedy. [Citations omitted, emphasis added.]

Similarly, in *Reneau v. Wayne Griffin & Sons, Inc.,* 945 F.2d 869, 870 (5th Cir. 1991), the Court explained the purpose and proper application of the remedies of reinstatement and front pay in discrimination claims:

The purpose of ADEA remedies is to make the victim of age discrimination whole. The most obvious way to make a plaintiff whole is to award back pay denied by termination and then reinstate the plaintiff, thereby negating the effect of the unlawful termination. Since reinstatement may not be feasible, front pay may make the plaintiff whole by providing the wages that plaintiff would have received, less any income derived from other employment or unemployment compensation. **Front pay is usually appropriate when a plaintiff is discharged in violation of ADEA and not reinstated by the court.** Front pay may be denied or reduced when the employee fails to mitigate damages by seeking other employment. [Emphasis added.]

Both *Brooks* and relevant federal caselaw make clear that the initial decision as to the availability of these remedies in a particular case is assigned to the trial court. Our review of the trial judge's decision is under an abuse of discretion standard. *Brooks,* 132 S.W.3d at 806.

Applying these principles to Ferry's situation, we are convinced that once Cundiff obtained an order prohibiting reinstatement, it was incumbent upon the trial judge to consider an award of front pay as a substitute for the equitable remedy of reinstatement provided for in KRS

342.197. Because it appears from the trial judge's order that she was of the opinion that front pay did not fall within the purview of that statute, we are convinced that the case must be remanded for re-consideration in light of our determination that it is an appropriate element of damage for workers claiming retaliatory discharge for filing a workers' compensation claim.

■ Furthermore, because the *Brooks* court cites with approval the following language from *Reneau,* our decision will not necessitate a new trial: "Thus, the trial 'court rather than the jury should determine whether an award of front pay is appropriate, and if so, the amount of the award.' " *Id.* Additionally, the opinion in *Reneau* offers the following guidance as to the factors to be considered in making a determination as to front pay:

> On remand, the district court is not bound to any particular award for any set period of time. It should consider the length of prior employment, the permanency of the position held, the nature of work, the age and physical condition of the employee, possible consolidation of jobs and the myriad other non-discriminatory factors which could validly affect the possible Reneau/Griffin post-discharge employment relationship. The court must determine whether any front pay award is equitably required and, if so, for what period of time such pay should be granted. It may choose to conduct such further proceedings as it deems necessary to make the required determinations.

945 F.2d at 871.

Next, Ferris complains that the reduction of his back pay award by the amount of benefits he received under a union disability retirement plan constitutes an abuse of discretion. We agree.

Again, we look to federal discrimination caselaw for its handling of similar payments. Contrary to Cundiff's assertion that the tort concept of "collateral source" is inapplicable to this proceeding, the Sixth Circuit Court of Appeals in *Hamlin v. Charter Tp. of Flint,* 165 F.3d 426, 434–5 (6th Cir.1999), clearly explained the rationale for applying that rule to statutory discrimination claims:

> Applying the collateral source rule in the employment discrimination context prevents the discriminatory employer from avoiding liability and experiencing a windfall, and also promotes the deterrence functions of discrimination statutes. *See Thurman,* 90 F.3d at 1171 ("Permitting an employer to benefit from other sources of income like unemployment compensation and worker's compensation would not serve the deterrence function of [Title VII].... [U]nemployment compensation is not paid to discharge a liability of the employer. It is paid to carry out the social policies of the state.").

These decisions of our court are consistent with the holdings in other circuits. *See, e.g., Doyne v. Union Elec. Co.,* 953 F.2d 447, 451–52 (8th Cir.1992) (finding that pension payments from a collateral source should not have been deducted from the plaintiff's jury verdict in an age discrimination case); *EEOC v. O'Grady,* 857 F.2d 383, 389 (7th Cir. 1988) (affirming the district court's refusal to offset pension benefits from an age discrimination award).

More recently, the Eighth Circuit advanced similar reasoning in applying the collateral source rule to a discrimination claim:

> We also reject Datanet's argument that the district court erred in failing to deduct worker's compensation benefits paid by an insurance company from Moysis' back pay award. In *Gaworski*

*v. ITT Comm. Fin. Corp.*, 17 F.3d 1104, 1112 (8th Cir.), *cert. denied*, 513 U.S. 946, 115 S.Ct. 355, 130 L.Ed.2d 310 (1994), this court stated that " 'an employer can not set up in mitigation of damages in a tort action by an injured employee indemnity from a collateral source, such as insurance or compensation or benefits under a Workmen's Compensation Act, even where the defendant has contributed to the fund.' " (quoting *Chicago Great W. Ry. v. Peeler*, 140 F.2d 865, 868 (8th Cir.1944)). We then applied the "collateral source rule" and refused to deduct unemployment benefits from a back pay award in an age discrimination action, noting the rule "gains in significance in the context of employment discrimination claims." *Id.* **We explained this is so because back pay awards not only serve to make a victim whole, they also "deter future discrimination."** *Id.* **at 1113. If the unemployment benefits were deducted, this court reasoned that it would be "less costly for the employer to wrongfully terminate a protected employee."** *Id.* **Put another way, deduction of the benefits would constitute "a windfall to the employer who committed the illegal discrimination."**

*Moysis v. DTG Datanet*, 278 F.3d 819, 828 (8th Cir.2002), emphasis added.

There is also Kentucky precedent on the subject of collateral source payments in an action alleging employment discrimination on the basis of disability. In *Hardaway Management Co. v. Southerland*, 977 S.W.2d 910, 918 (Ky.1998), the Supreme Court of Kentucky confirmed the availability of the collateral source rule in statutory discrimination claims:

There is a strong public policy in this Commonwealth against double recovery for the same elements of loss. An exception, of course, is the collateral source rule that "damages recoverable for a wrong are not diminished by the fact that the injured party has been wholly or partly indemnified by insurance (*to whose procurement the wrongdoer did not contribute* )." **The logic behind this rule is that there is no reason why a wrongdoer should receive the benefit of insurance obtained by the injured party for his own protection.** [Citations omitted; emphasis added.]

■ In light of the rationale expressed in these decisions, we find no basis for refusing to apply the collateral source rule with regard to Ferry's disability pension purchased through his local union. Cundiff does not dispute Ferry's contention that it did not contribute to the procurement of his union disability pension, nor does it allege that the payments were made in its behalf. On these facts, payments made pursuant to Ferry's union disability pension plan fall squarely within the rationale of the cited caselaw and thus were improperly deducted from his back pay award.

Accordingly, the judgment of the Jefferson Circuit Court is reversed and the case remanded for further proceedings consistent with this opinion.

ALL CONCUR.