**HIGHLANDS HOSPITAL CORPORATION, Appellant/Cross–Appellee,**

v.

**Jessica PREECE, Appellee/Cross–Appellant.**

Nos. 2008–CA–000371–MR, 2008–CA–000484–MR.

Court of Appeals of Kentucky.

Feb. 19, 2010.

Discretionary Review Denied by Supreme Court Nov. 10, 2010.

Vincent Candiello (argued), Harrisburg, PA, Thomas M. Smith, Prestonsburg, KY, for appellant.

Earl M. McGuire (argued), Prestonsburg, KY, for appellee.

Before CLAYTON and THOMPSON, Judges; LAMBERT,[1] Senior Judge.

## OPINION

THOMPSON, Judge.

Jessica Preece commenced this action in the Floyd Circuit Court alleging that her employer, Highlands Hospital Corporation (HHC), interfered with the exercise of her rights provided under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2615 (FMLA). She also alleged that HHC intentionally inflicted emotional distress. The circuit court granted HHC's motion for partial summary judgment in regard to the intentional infliction of emotional distress claim but denied HHC's motion as it applied to the FMLA claim. A jury returned a verdict in favor of Preece, finding that HHC interfered with the exercise of her rights under the FMLA and awarded $35,000 for lost wages. Because the jury also found that HHC acted in bad faith pursuant to 29 U.S.C. § 2617(a)(1), the trial court doubled the jury's award in the amount of $35,000 and awarded $27,000 in front pay.

HHC asserts four issues on appeal: (1) whether the trial court improperly admitted the testimony of Mary Jarvis, a former HHC employee; (2) whether the trial court erred when it denied its motion for directed verdict on the basis that prior to her termination, Preece received her entitlement under the FMLA; (3) whether Preece was entitled to double damages and front pay; and (4) whether the jury instructions properly stated the applicable law. In her cross-appeal, Preece raises three errors; however, because we affirm the jury's verdict, it is only necessary to discuss her assertion that the trial court erroneously granted HHC summary judgment on her claim for intentional infliction of emotional distress. Because we reject the parties' arguments, we affirm.

## FACTS

Preece began employment with HHC as a Certified Nursing Assistant on July 3, 2000. Her annual salary was $18,969.60, and she worked twelve-hour shifts, including one unpaid hour for lunch. Her regular schedule required that she work three shifts one week followed by four shifts the following week for a total of seven shifts every two weeks.

In April 2004, Preece discovered that she was pregnant and, after several months, began to have physical difficulties attributable to her pregnancy. Because she anticipated that she would require time off work, Preece approached Tamara Clark, the human resources department manager, regarding intermittent family medical leave. At that time, Preece was informed that she had twelve weeks of leave available under the FMLA. However, Preece testified that she was neither told how the twelve weeks would be calculated nor informed that she could use her

1. Senior Judge Joseph E. Lambert sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

accumulated vacation and sick days instead of FMLA leave. Further, Clark did not inform her that intermittent leave would be calculated on an hourly basis rather than the days missed. Although there was a poster displayed at HHC that informed employees regarding FMLA leave, it stated only that twelve weeks would be granted and did not detail HHC's method of calculating the leave period.

After signing the necessary papers, Preece took her initial day of intermittent leave on June 16, 2004, and did so periodically until the birth of her child on October 21, 2004, which according to HHC's records totaled seventy-seven hours. However, Preece had no means to track the number of days or hours that HHC counted toward her FMLA leave.

Preece testified that after her release from the hospital following the birth of her child, on October 28, 2004, she and her husband went to HHC for the purpose of adding the child to her health insurance policy. At that time, she received a FMLA form from HHC, which she signed. However, when she later received a copy of the signed form in the mail, it stated that her FMLA leave commenced on October 21, 2004, and ended on December 30, 2004. She testified that she was unaware that her FMLA application would be backdated to a week prior to her signature. Based on information Preece allegedly received from Clark, Preece testified that she did not take twelve continuous weeks of FMLA leave and reserved two additional weeks as a contingency following her child's birth. Preece returned to work on December 30, 2004. Due to a temporary illness, she missed work on January 18, 2005, and on February 15, 2005, was absent because of postpartum depression.

Pursuant to HHC's policy, excessive absenteeism, excused or not, could lead to disciplinary action, including dismissal.

Because prior to taking her FMLA leave Preece had received verbal and written warnings for absenteeism, HHC took the position that Preece's absences in January and February of 2005 were not covered under the FMLA. Although Preece had seven hours of leave time remaining pursuant to HHC's leave policy at the time of her last absence on February 24, 2005, Preece was notified that she was terminated from her employment because of excessive absenteeism.

Additional facts will be developed as necessary for our discussion of the issues, including the testimony offered by Tamara Clark and Mary Jarvis, a former HHC employee.

## FMLA CLAIMS

■ The FMLA permits eligible employees of a covered employer to be absent from work for twelve weeks during a twelve-month period for specified reasons, including the birth of a child. Upon return to employment, the employee is entitled to be restored to the same or an equivalent position. 29 U.S.C. § 2614(a). Under the Act, an employee who exceeds the leave time afforded is not entitled to be restored to his or her former position. *Austin v. Fuel Systems, LLC,* 379 F.Supp.2d 884 (W.D.Mich.2004).

■ The FMLA provides that it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). However, the FMLA does not create a cause of action to enforce voluntary employer practices that exceed its requirements. *Dolese v. Office Depot, Inc.* 231 F.3d 202 (5th Cir.2000).

■ If an employee alleges that her FMLA rights were denied, the employee must demonstrate by a preponderance of

the evidence that he or she was entitled to leave. *King v. Preferred Tech. Group*, 166 F.3d 887, 891 (7th Cir.1999). Thus, to prevail on her FMLA interference claim, Preece was required to establish that: (1) she was an eligible employee; (2) HHC was an employer; (3) she was entitled to leave under the FMLA; (4) she gave notice of her intention to take leave; and (5) HHC denied her FMLA benefits to which she was entitled. *Fisher v. Rizzo Bros. Painting Contractors, Inc.*, 403 F.Supp.2d 593 (E.D.Ky.2005).

Because it is undisputed that Preece was an eligible employee, that HHC was an eligible employer, and that Preece's leave was requested and granted to accommodate her pregnancy, the contested element of Preece's FMLA claim was whether HHC interfered with the amount of FMLA leave to which Preece was entitled. Her claim focused on HHC's failure to give her sufficient information regarding the calculation of her benefits and the time used prior to her 2005 absences.

Under the FMLA, "[a]n employer is permitted to choose any one of the following methods for determining the '12-month period' in which the 12 weeks of leave entitlement ... occurs."

(1) The calendar year;

(2) Any fixed 12–month "leave year," such as a fiscal year, a year required by State law, or a year starting on an employee's "anniversary" date;

(3) The 12–month period measured forward from the date any employee's first FMLA leave under paragraph (a) begins; or,

(4) A "rolling" 12–month period measured backward from the date an employee uses any FMLA leave....

29 C.F.R. § 825.200(b). If an employer fails to choose an option specified, the court must measure the twelve-month period by the option that provides the most beneficial outcome for the employee. 29 C.F.R. § 825.200(e).

The method chosen by the employer can have significant consequences as demonstrated by HHC's position. It maintains that it chose the rolling method to calculate its employee's leave time. Under that method, "each time an employee takes FMLA leave the remaining leave entitlement would be any balance of the 12 weeks which has not been used during the immediately preceding 12 months." 29 C.F.R. § 825.200(c). According to HHC, Preece used the entire twelve weeks of her entitled leave prior to 2005; thus, she was not entitled to any additional leave after January 2005 until she completed an additional twelve months of employment. However, if HHC utilized the calendar year method, Preece would not have utilized her entire twelve weeks prior to January 2005 and, thus, was terminated in violation of the FMLA. 29 C.F.R. § 825.200(c); *Austin*, 379 F.Supp.2d at 890.

■ A requirement that the employer inform an employee of the method chosen to calculate leave is more obscure and not found in the FMLA or its implementing regulations. Yet, because the calculation method chosen is often determinative of the amount of leave available, courts have imposed upon the employer an obligation to inform the employee of the method selected. To effectuate the purpose of the FMLA, we are persuaded that the employer's obligation includes informing the employee of the method selected to calculate leave.

■ In *Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112 (9th Cir.2001), the Court examined the regulations and found it to be implicit that "an employer's 'selection' of a calculating method must be an open rather than a secret act, necessarily carrying with it an obligation to inform

its employees thereof." *Id.* at 1128 (footnote omitted). We agree with this common sense approach. An employee who is not fully informed of her available FMLA leave can unknowingly be lured into absences beyond that to which she is entitled and suffer termination. Such an adverse consequence cannot flow from the exercise of a statutory right. Thus, we agree with the reasoning in *Bachelder* that the failure to inform the employee of the method selected is the same as if no selection of method had been made, which pursuant to regulations, requires that "the option that provides the most beneficial outcome for the employee" be used. *Id., quoting* 29 C.F.R. § 825.200(e).

In addition to providing information regarding the method selected, the employer is required to inform the employee of leave designated as FMLA leave. *See Downey v. Strain,* 510 F.3d 534, 538 (5th Cir.2007).

■ Although we agree that the employer must inform an employee of the calculation method selected and of designated FMLA leave, we are also aware that a breach of those obligations does not result in strict liability. The United States Supreme Court has clarified that the employee must demonstrate that she was prejudiced by the employer's violation to recover under the FMLA. *Ragsdale v. Wolverine World Wide, Inc.,* 535 U.S. 81, 90–91, 122 S.Ct. 1155, 1162, 152 L.Ed.2d 167 (2002).

We now turn to the issues presented.

### MARY JARVIS'S TESTIMONY

■ We have chosen to first address HHC's assertion that Mary Jarvis's testimony was irrelevant. The significance of her testimony will become apparent within our discussion of the issues presented regarding the denial of HHC's directed verdict motion and the award of double damages and front pay.

We review a trial court's ruling on the admissibility of evidence for abuse of direction. *Goodyear Tire & Rubber Co. v. Thompson,* 11 S.W.3d 575, 577 (Ky.2000). HHC contends that the trial court abused its discretion when it permitted Mary Jarvis to testify.

Jarvis was employed at HHC for twenty-three years, the last twelve years as the budget manager. In that capacity, she prepared the annual budget for the corporation, monthly manager reports, and worked closely with management, including HHC's CEO. Jarvis was familiar with the administration of FMLA because of her employment duties and her own experience with taking FMLA leave. She testified that she was required to return to work prior to the expiration of her FMLA leave and eventually was persuaded to resign. She explained that HHC planned to eliminate senior employees to reduce costs and the costs associated with FMLA leave, such as employee replacement.

■ HHC contends that Jarvis's testimony was not relevant to Preece's FMLA action. The employer's motive is relevant to establish that the employer acted in bad faith for the purpose of liquidated damages. *Arban v. West Pub. Corp.,* 345 F.3d 390, 407 (6th Cir.2003). Jarvis had personal knowledge of HHC's procedures and practices regarding the FMLA, and her testimony was relevant to the issue of HHC's good faith in implementing the FMLA. We find no error.

### HHC'S MOTION FOR DIRECTED VERDICT

Our standard of review of a trial court's refusal to grant a directed verdict is whether "the verdict rendered is palpably or flagrantly against the evidence so as to indicate that it was reached as a result of passion or prejudice." *Gersh v. Bowman,*

239 S.W.3d 567, 571–72 (Ky.App.2007), *citing Brooks v. Lexington–Fayette Urban County Hous. Auth.,* 132 S.W.3d 790, 797–98 (Ky.2004). The prevailing party is entitled to all reasonable inferences that can be drawn from the evidence. *Id.*

In support of its motion for directed verdict, HHC repeated its argument presented in its motion for summary judgment that because Preece exhausted her FMLA leave prior to her 2005 absences, she could not succeed on her FMLA interference claim. Although Preece had seven hours remaining under HHC's leave policy at the time of her termination, HHC pointed out that its voluntary leave policy was outside the scope of the FMLA and could not provide the basis for a FMLA action. *Dolese,* 231 F.3d at 203.

We conclude that when viewed most favorably to Preece, the evidence was sufficient to overcome HHC's directed verdict motion.

Preece testified that she was not informed that HHC had selected the rolling method of calculation or that her intermittent leave would be calculated on an hourly basis. Thus, she asserted that she was not fully informed of her FMLA rights and, therefore, she was entitled to have her leave calculated using the calendar year method and that her termination in February 2005 interfered with the exercise of her remaining leave. Moreover, she was not aware that her request for FMLA leave had been back-dated.

Mary Jarvis testified that HHC planned to reduce the costs associated with FMLA leave and that employees, including herself, had been required to return to work prior to the expiration of her FMLA leave.

Tamara Clark testified that HHC's Human Resource Policy and Procedure Manual did not detail the rights and obligations under the FMLA or the method used to calculate leave. The union contract referenced the FMLA but parroted only that the FMLA "shall be administered in accordance with its terms" and that the employees agreed to comply with the provisions of the Act and its regulations. Although a poster on HHC's premises informed employees that they had twelve weeks of leave under the FMLA, it gave no other specific information.

Clark further verified that she only informed Preece that she had twelve weeks of available FMLA leave time. Moreover, HHC's responses to interrogatories read into evidence by Clark revealed that HHC did not calculate the leave by Preece based on a typical work week but did so based on her hourly work schedule, resulting in a confusing and difficult computation.

When Preece took continuous leave between October 21, 2004, and December 30, 2004, the time was calculated on a weekly basis for a total of ten weeks. However, intermittent leave taken prior to the birth was based on her average twelve weeks prior to the beginning of her leave. Clark's testimony reveals the complexity:

> Plaintiff's intermittent leave began on June the 16th, 2004. Each of the twelve (12) preceding weeks of work reflected the following: week ending (W/E June the 9th 2004 (39.4 hours worked); W/E 6/2/2004 44.25 hours worked; W/E 5/26/04 33 hours worked; W/E 5/19/04 44 hours worked; W/E 5/12/04 33 hours worked; W/E 5/5/04 11 hours worked; W/E 4/28/04 33 hours worked; W/E 4/21/04 44 hours worked; W/E 4/14/04 33 hours worked; W/E 4/7/04 44 hours worked; W/E 3/31/04 32 hours worked; and 3/23/03 44 hours worked. The total hours worked during those twelve weeks was 434.75 hours. When an average is derived, the Plaintiff's normal hours worked in a work week was 36.2 hours. 434.75 divided by 12 equals 36.2 hours/

week. Therefore, for the intermittent leave purposes, whenever Plaintiff took off 36.2 hours, she consumed a week of FMLA. For purposes of intermittent leave, days are not counted.

Based on HHC's calculations, Preece was entitled to 434.4 hours of FMLA leave.

HHC certifies that the calculation of intermittent leave requires that the employee's work week be converted into work hours. However, it ignores that Clark testified that Preece was not informed regarding how the leave would be calculated or the amount to which she was entitled.

The confusion surrounding the amount of FMLA time remaining after Preece returned to work in January 2005 was magnified by HHC's failure to notify Preece whether her absences were counted as FMLA leave, sick days, or holidays. For instance, HHC's time-scheduling records revealed that she was to work on July 25, 2004, but the punch detail records show that this was on a paid holiday, yet, her absence was calculated as FMLA leave.

 Our review of the voluminous record convinces this Court that there was sufficient evidence that HHC failed not only to inform Preece of the method used to calculate her FMLA leave but failed to keep accurate records so that the used leave could be determined. Thus, a jury question existed as to whether HHC interfered with Preece's FMLA rights.

Assuming it failed to adequately inform Preece of her FMLA rights, HHC makes the argument that she was not prejudiced. It asserts that Preece failed to demonstrate that had she been aware that her FMLA leave expired, she would not have missed work in January and February 2005. Moreover, it points out that she did not seek FMLA leave in 2005 until after her termination.

 HHC's contention is contradicted by the record. Had Preece been aware that her FMLA time was about to expire, there was evidence that she was capable of returning to work prior to January 2005 and, at the time of termination, was in the process of obtaining a physician's certificate for FMLA leave. There was sufficient evidence to support the finding that Preece was prejudiced by HHC's violations of the FMLA.

## THE AWARD OF LIQUIDATED DAMAGES AND FRONT PAY

 The FMLA provides specific statutory relief when its provisions are violated. 29 U.S.C. § 2617(a)(1) states that an employer who violates the Act is liable to its employee:

(A) for damages equal to—

(i) the amount of—

(I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or

(II) in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks (or 26 weeks, in a case involving leave under section 2612(a)(3) of this title) of wages or salary for the employee;

(ii) the interest on the amount described in clause (i) calculated at the prevailing rate; and

(iii) an additional amount as liquidated damages equal to the sum of the amount described in clause (i) and the interest described in clause (ii), except that if an employer who has violated section 2615 of this title proves to the satisfaction of

the court that the act or omission which violated section 2615 of this title was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615 of this title, such court may, in the discretion of the court, reduce the amount of the liability to the amount and interest determined under clauses (i) and (ii), respectively; and

**(B)** for such equitable relief as may be appropriate, including employment, reinstatement, and promotion.

■ Although termed a liquidated damage provision, the doubling of the jury's award is premised upon a finding that the employer acted in bad faith and that it did not have objectively reasonable grounds for its act or omission. *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 251 (6th Cir.2004). The Act explicitly provides that upon a finding that the employer acted in bad faith and unreasonably, the court is to award damages equal to the monetary amount denied or lost to the employee by reason of the employer's violation. 29 U.S.C. § 2617(a)(1).

■ Liquidated damages are appropriate unless the employer sustains its "burden of proving that its failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon it more than a compensatory verdict." *Arban*, 345 F.3d at 408 (internal quotations and citations omitted). It must present substantial evidence of at least an honest intention to ascertain what the Act requires and to comply with the Act. *Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58, 70–71 (2nd Cir. 1997). Although a court's decision on liquidated damages is reviewed for abuse of

discretion, that discretion must be exercised consistently with the strong presumption in favor of doubling. *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 840 (6th Cir.2002).

There was evidence presented to the jury that Preece was misled by HHC's human resources department as to the calculation of her FMLA time and supported by Preece's testimony that her FMLA application was back-dated. Moreover, there was evidence that HHC failed to comply with the FMLA notice requirements and did not accurately track Preece's FMLA leave. Mary Jarvis's testimony was further evidence of HHC's bad faith.

Based on the evidence presented, the jury found that HHC acted in bad faith and that its violation of the FMLA was not based on objectively reasonable grounds. The trial court's award of liquidated damages in the amount of $35,000 and prejudgment interest was not an abuse of discretion.

■ Although 29 U.S.C. § 2617 does not mention front pay, the federal courts have held it is a viable equitable remedy. *Arban*, 345 F.3d at 406. It is a remedy to be awarded in addition to liquidated damages and its award is within the trial court's discretion. *Walther v. Lone Star Gas Company*, 952 F.2d 119, 127 (5th Cir. 1992).[2]

■ Generally, reinstatement is considered the preferable remedy but front pay is appropriate as an alternative when reinstatement is not feasible, such as where neither party seeks reinstatement. *Downey*, 510 F.3d at 544. The factors to be considered when determining front pay include:

---

**2.** We stress that liquidated damages and front pay are distinct awards. Whether the trial court properly made this distinction and awarded the amount of the jury award as liquidated damages and an additional amount as front pay is not presented by Preece.

[A]n employee's duty to mitigate, the availability of employment opportunities, the period within which one by reasonable efforts may be re-employed, the employee's work and life expectancy, the discount tables to determine the present value of future damages and other factors that are pertinent on prospective damage awards.

*Roush v. KFC Nat. Management Co.*, 10 F.3d 392, 399 (6th Cir.1993) (internal quotations and citations omitted).[3]

■ The trial court awarded Preece twelve-months front pay in the amount of $27,000, representing her yearly wages and benefits. Its refusal to order reinstatement was based on its finding that neither of the parties had expressed an interest or willingness to continue an "unpleasant" employment relationship. Because it eliminated reinstatement as a remedy, the trial court focused upon Preece's entitlement to front pay and its amount. It considered that she attempted to mitigate her damages by seeking employment and that while unemployed, her nurse's aide certificate had expired and required recertification.

HHC contends that the front pay award was actually to compensate Preece for the cost of her future educational goals. *See Shore v. Federal Exp. Corp.*, 777 F.2d 1155, 1160 (6th Cir.1985). While we agree that the cost of placing an employee in a better position should not be imposed on the employer, this is not the result of the trial court's award. The one-year front pay was directly related to Preece's wages and benefits. The award of one-year front pay was not an abuse of discretion.

## THE JURY INSTRUCTIONS

Our standard of review of alleged errors in jury instructions is *de novo*. *Hamilton v. CSX Transportation, Inc.*, 208 S.W.3d 272, 275 (Ky.App.2006).

Instructions must be based upon the evidence and they must properly and intelligibly state the law. The purpose of an instruction is to furnish guidance to the jury in their deliberations and to aid them in arriving at a correct verdict. If the statements of law contained in the instructions are substantially correct, they will not be condemned as prejudicial unless they are calculated to mislead the jury.

*Id.* at 275 (internal quotations and citations omitted).

The instructions propounded included a description of the FMLA and the obligations of HHC. The jury was instructed that Preece was entitled to twelve-weeks leave during a twelve-month period that commenced on June 16, 2004, and that her intermittent leave was required to be converted to hours. The trial court also instructed the jury that HHC was required to provide written notice of Preece's rights and obligations under the FMLA. Finally, it instructed that the jury find in Preece's favor if it believed that HHC interfered with Preece's FMLA rights.

HHC does not allege error in the instructions given but complains that the trial court erroneously denied its proposed additional instruction which stated:

The FMLA provides that it does not 'diminish the obligation of an employer to comply with ... any employment benefit program or plan that provides greater family or medical leave rights' than the FMLA. 29 U.S.C. § 2652(a);

---

3. In *Arban*, the Court held that the amount of any front pay is a jury question; however, the propriety of an award of front pay is a matter for the Court. *Arban*, 345 F.3d at 406. Nei-

ther party has objected to the consideration of both issues by the trial court, therefore, we decline to further address the issue.

see also 29 C.F.R. § 825.700(a). It further provides that the FMLA should not be interpreted to 'discourage employers from adopting or retaining leave policies more generous that any policies that comply with ... the Act....' 29 U.S.C. § 2653. The FMLA does not create a federal cause of action to enforce voluntary employer policies that exceed the requirements of the FMLA.

Because of the omitted instruction, HHC maintains that the jury was permitted to conclude that Preece was entitled to FMLA leave in January and February 2005, even though she was entitled only to leave under HHC's more generous leave policy, which does not afford her relief under the FMLA.

HHC's challenge to the instructions is nothing more than a reiteration of its previous contention and ignores the basis of Preece's claim. She did not claim that she was denied leave under HHC's leave policy. The evidence presented and the factual questions to be resolved by the jury related to the notice of the FMLA leave granted, the calculation of leave time, and how much FMLA leave she had used at the time of her termination. Thus, whether she had seven hours of HHC-provided leave was not a question to be resolved.

## PREECE'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

On a motion for summary judgment, the court is required to view the facts most favorably to the opposing party. It may grant the motion only when there is no genuine issue of material fact and the non-moving party cannot prevail at trial. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky.1991).

■ The trial court denied Preece's claim for intentional infliction of emotional distress on the basis that the claim was

preempted by the FMLA, which expressly limits damages to: (1) compensatory damages equal to the amount of any wages, salary, employment benefits or other compensation which was denied or lost by reason of the violation; (2) interest on compensatory damages; and (3) liquidated damages. 29 U.S.C. § 2617. No additional remedies are available, including punitive damages. *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1133 n. 6 (9th Cir.2003). As a result, a claim for intentional infliction of emotional distress is not sustainable under the FMLA. *Settle v. S.W. Rodgers Co., Inc.*, 998 F.Supp. 657, 666 (E.D.Va.1998).

Preece attempts to avoid the constraints of the FMLA by arguing that her claim for intentional infliction of emotional distress is based on state law and arises from her termination, not from the FMLA violations. Even if her claim can be separated and constitute a distinct tort, the facts cannot support her claim.

■ *"Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."* *Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1, 3 (Ky.1990) (quoting *Restatement (Second) of Torts* § 46, Comment d.) (emphasis original). Termination from employment, even if for discriminatory reasons, is insufficient to constitute outrageous conduct sufficient to support a claim for intentional infliction of emotional distress. *Benningfield v. Pettit Environmental Inc.*, 183 S.W.3d 567, 572 (Ky.App. 2005).

■ In this case, there is no evidence that HHC intended to cause emotional distress when it terminated Preece or that it acted recklessly. Her wrongful termination alone is insufficient to support a

claim for intentional infliction of emotional distress.

Based on the foregoing, the judgment of the Floyd Circuit Court is affirmed.

ALL CONCUR.