RENDERED: JUNE 27, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0966-MR

MARSHALL COUNTY HOSPITAL          APPELLANT

v.      APPEAL FROM MARSHALL CIRCUIT COURT
HONORABLE ANDREA L. MOORE, JUDGE
ACTION NO. 20-CI-00282

DARLENE HARVEY          APPELLEE

AND

NO. 2024-CA-0993-MR

MARSHALL COUNTY HOSPITAL          APPELLANT

v.      APPEAL FROM MARSHALL CIRCUIT COURT
HONORABLE ANDREA L. MOORE, JUDGE
ACTION NO. 20-CI-00282

DARLENE HARVEY          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, ECKERLE, AND McNEILL, JUDGES.

ECKERLE, JUDGE:

Appellant, Marshall County Hospital (the "Hospital"), challenges the Marshall Circuit Court's Orders granting Appellee, Darlene Harvey ("Harvey"), front pay and attorney's fees.  For the reasons set forth herein, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

This appeal arises from Harvey's claims against the Hospital and its Chief Executive Officer, David Fuqua ("Fuqua"), alleging, *inter alia*, unlawful retaliation in violation of the Kentucky Civil Rights Act ("KCRA"), Kentucky Revised Statutes ("KRS") 344.010 *et seq.*

From 2001 to 2020, Harvey, a licensed pharmacist, served as the Hospital's Pharmacy Director.   Towards the end of her tenure, Harvey informed the Hospital's leadership of her desire to transition from its Pharmacy Director to a staff pharmacist role.  In February of 2020, Harvey contacted her direct supervisor, Tiffany Tubbs ("Tubbs"), to express interest in the Hospital's vacant, part-time staff pharmacist position.  In doing so, Harvey inquired if the Hospital would convert the position into full-time employment.  Tubbs rejected Harvey's request, claiming that the Hospital would not approve a full-time staff pharmacist position.  However, in March of 2020, the Hospital hired an external male candidate to fill the position, which the Hospital converted to a full-time role.  Harvey believed that

-2-

the Hospital's actions constituted gender discrimination. Consequently, Harvey notified Tubbs and other administration of her intent to file a complaint with the Equal Employment Opportunity Commission ("EEOC").

On March 30, 2020, Harvey met with Tubbs and other Hospital administrators. During this meeting, Harvey claims that Tubbs demanded Harvey's verbal commitment to continuing as the Hospital's Pharmacy Director. Harvey responded to Tubb's request by reiterating her wish to transition to a full-time staff pharmacist position at the Hospital. Tubbs interpreted Harvey's statements as notice of her resignation. The following day, March 31, 2020, Harvey met again with Hospital administration. During this second meeting, Harvey explained that her statements to Tubbs did not express her resignation, and that she intended to continue working as the Hospital's Pharmacy Director. Harvey further stated that the Hospital was acting in a discriminatory and retaliatory manner. Hospital administration summarily terminated Harvey.

On April 21, 2020, Harvey filed a charge of gender discrimination with the EEOC and the Kentucky Commission on Human Rights. The administrative charge was closed without determination in August of 2020. On October 30, 2020, Harvey brought the underlying lawsuit against the Hospital and Fuqua. Harvey's six-count Complaint alleged gender discrimination against the Hospital, retaliation against the Hospital and Fuqua, breach of contract against the

-3-

Hospital, and fraudulent or negligent misrepresentation against the Hospital and Fuqua.

In August of 2023, having experienced minimal advancement of her claims, Harvey obtained new counsel, Michael A. Augustus ("Augustus"). In December of 2023, with leave of the Trial Court, Harvey filed an Amended Complaint, asserting her original six causes of action with additional factual allegations. Written and oral discovery ensued. Dispositive motion practice also occurred, including the Hospital's Motion for Summary Judgment. Following denial of that motion and an unsuccessful mediation, a three-day jury trial commenced in April of 2024.

On the first day of trial, Harvey voluntarily dismissed four counts of her Amended Complaint, but moved forward with prosecuting the counts of retaliation against the Hospital and Fuqua in violation of KRS 344.280. Harvey requested the jury award damages in the amount of $844,664.00, representing $268,196.00 in lost wages, $76,468.00 in lost benefits, and $500,000.00 for emotional distress. The jury returned a verdict finding that the Hospital, but not Fuqua, committed retaliation against Harvey in response to her engagement in protected activity under the KCRA. The jury awarded Harvey a total of $100,000.00 in damages, representing $75,000.00 in lost wages and $25,000.00 in lost benefits. The jury did not award Harvey damages for emotional distress.

On April 18, 2024, the Trial Court entered Judgment on the jury's verdict, ordering the Hospital to pay Harvey $100,000.00. The Trial Court reserved jurisdiction to enter supplemental judgments as to Harvey's entitlement to attorney's fees, in addition to Harvey's request for front pay. The Hospital does not challenge this Judgment.

On May 10, 2024, Harvey filed a Motion for Approval of Application for Award of Attorney's Fees and Other Costs of this Litigation ("Motion for Fees"). Harvey also filed a Motion for an Award of Front Pay in Lieu of Reinstatement ("Motion for Front Pay"). The Hospital filed responses in opposition, after which Harvey replied. The Hospital and Harvey also provided the Trial Court with competing proposed orders, neither of which included factual findings or legal analyses.

On July 9, 2024, the Trial Court conducted joint hearings on Harvey's Motion for Fees and Motion for Front Pay. That same day, following the hearing, the Trial Court signed Harvey's proposed orders. Specifically, the Trial Court entered the following Orders: (1) an Order awarding Harvey $200,000.00 in front pay ("Order Awarding Front Pay"), and (2) an Order awarding Harvey $101,835.00 in attorney's fees ("Order Awarding Fees).[1] It is from both Orders the Hospital filed separate notices of appeal.

_____

[1] The Trial Court's Order Awarding Fees also awarded Harvey $3,367.77 in litigation costs.

## STANDARD OF REVIEW

This Court reviews a Trial Court's front pay award for an abuse of discretion. *Brooks v. Lexington-Fayette Urban Cnty. Hous. Auth.*, 132 S.W.3d 790, 806 (Ky. 2004); *Highlands Hosp. Corp. v. Preece*, 323 S.W.3d 357, 367 (Ky. App. 2010). We similarly apply an abuse of discretion standard of review to claims of error concerning a Trial Court's award of attorneys' fees. *Banker v. University of Louisville Athletic Ass'n, Inc.*, 466 S.W.3d 456, 465 (Ky. 2015). Under the abuse of discretion standard of review, we will not disturb a Trial Court's decision unless it was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000).

## ANALYSIS

A. Order Awarding Front Pay-Appeal No. 2024-CA-0966-MR

Kentucky Courts enjoy statutory authority to award equitable and monetary relief to those injured from violations of the KCRA. Specifically, KRS 344.450 states as follows:

> Any person injured by any act in violation of the provisions of this chapter shall have a civil cause of action in Circuit Court to enjoin further violations, and to recover the actual damages sustained, together with the costs of the lawsuit. The court's order or judgment shall include a reasonable fee for the plaintiff's attorney of record and any other remedies contained in this chapter.

The Kentucky Supreme Court interpreted the language "to enjoin further violations, and to recover the actual damages sustained" as the Legislature's allowance of equitable relief in the form of reinstatement and/or front pay. *Brooks*, 132 S.W.3d at 809. A Trial Court, therefore, may order the employer to reinstate the employee, award the employee front pay in lieu of reinstatement, or order reinstatement along with front pay for losses incurred between judgment and reinstatement. *Id.* Reinstatement is generally the preferred remedy. *Id.* However, where reinstatement is not requested or is not a viable option, a Trial Court may utilize an award of front pay to "enjoin further violations" of the KCRA. *Id.* Front pay is purely an estimate of a party's post-judgment lost wages. *See Macglashan v. ABS Lincs KY, Inc.*, 448 S.W.3d 792, 793-94 (Ky. 2014); *Dollar Gen. Partners v. Upchurch*, 214 S.W.3d 910, 920 (Ky. App. 2006) ("The purpose of front pay is limited to compensating the employee for wages lost as a result of the wrongful termination.").

The Hospital submits that the Trial Court's Order Awarding Front Pay constitutes an abuse of discretion in three ways. First, the Hospital argues that the Trial Court abused its discretion by failing to conduct the proper analysis in determining Harvey's entitlement to front pay. In support of its argument, the Hospital contends that the Trial Court's entry of Harvey's tendered Order, coupled with its failure to supply its reasoning or calculation, demonstrates that the award

is arbitrary and unsupported by sound legal principles. Second, the Hospital asserts that the Trial Court misapplied the law by accepting Harvey's claim of entitlement to front pay. Third, assuming Harvey is entitled to front pay, the Hospital urges this Court to perceive an abuse of discretion based on what it describes as inconsistencies between the Trial Court's Order Awarding Front Pay and the jury's award of damages.

Regarding the Hospital's first argument, we reject the notion that the Trial Court failed to conduct the requisite analysis by merely signing Harvey's proposed order without change, or by virtue of entering the proposed order without adding its analysis and calculation. The Hospital and Harvey fully briefed the Trial Court on the matter, presented evidentiary support, engaged in meaningful oral arguments, and provided competing proposed orders. The Trial Court's approval of Harvey's proposed order, without more, does not establish that the Trial Court derogated its duty to perform the proper legal analysis. Indeed, the Hospital fails to point this Court to any procedural rule or precedential authority requiring a Trial Court to supply its underlying analysis in awarding front pay.[2] Courts are tasked with making decisions. Here, the Trial Court made its judgment.

---

[2] Notably, the Hospital did not file a motion to amend the Order Awarding Front Pay pursuant to Kentucky Civil Rule of Procedure ("CR") 52.02. Along these lines, CR 52.04 may preclude reversal based on the Trial Court's failure to make a finding of fact on an issue essential to the judgment unless such failure is brought to the Trial Court's attention by written motion. However, as we are affirming, we do not reach the issue.

The mere speed of decision does not automatically constitute error. In fact, the opposite is often true, as justice delayed is justice denied. And the analysis, especially in lengthy litigation, briefing, and argument, can be plainly evident. As our review is confined to an abuse of discretion standard, the Hospital's argument is without merit.

Having determined that the Trial Court's failure to provide its underlying analysis is without consequence in this particular appeal, we turn to the Hospital's second argument. The Hospital cites two cases to support its argument that Harvey is not entitled to any front pay. In the first case, *Highlands Hospital Corporation v. Preece*, this Court analyzed entitlement to front pay in the context of the Family Medical Leave Act. 323 S.W.3d 357. In doing so, we listed the following factors as applicable considerations:

> [A]n employee's duty to mitigate, the availability of employment opportunities, the period within which one by reasonable efforts may be re-employed, the employee's work and life expectancy, the discount tables to determine the present value of future damages and other factors that are pertinent on prospective damage awards.

*Id.* at 366-67 (quoting *Roush v. KFC Nat. Mgmt. Co.*, 10 F.3d 392, 399 (6th Cir. 1993)).

The second case upon which the Hospital relies on is *Ferry v. Cundiff Steel Erectors, Inc.*, 218 S.W.3d 390 (Ky. App. 2006). In *Ferry*, we evaluated

-9-

entitlement to front pay in the setting of retaliation for an employee's filing of a workers' compensation claim. *Id.* This Court found reversible error where the Trial Court failed to consider front pay as a potential remedy. *Id.* at 392. On remand, we instructed the Trial Court to consider whether front pay is equitably required with the primary intention of making the plaintiff whole. *Id.* at 392-93. In reaching this holding, we quoted the Fifth Circuit Court of Appeals as follows: "**Front pay is usually appropriate when a plaintiff is discharged in violation of ADEA [Age Discrimination Employment Act] and not reinstated by the court**. Front pay may be denied or reduced when the employee fails to mitigate damages by seeking other employment." (Emphasis in original) (quoting *Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 870 (5th Cir. 1991)).

In review of these two cases, we find no basis to conclude that the Trial Court abused its discretion in entitling Harvey to front pay. Upon a party's request for front pay, the governing law requires a Trial Court to consider whether reinstatement is a feasible remedy. If not, a Trial Court must then evaluate if front pay is equitably necessitated to enjoin further violations of the KCRA and to make the plaintiff whole. This analysis should consider the factors expressed in *Preece*. As applied to the case *sub judice*, the jury found that the Hospital violated Harvey's right to be free from retaliation upon her claim of discrimination pursuant to the KCRA. There has been no proffered evidence that either party desired

-10-

reinstatement or that reinstatement was a viable remedy. *See Upchurch*, 214

S.W.3d at 920 ("Upchurch [the employee], however, does not request that the

court order reinstatement; we, therefore, give that remedy no further

consideration."). As discussed below, Harvey provided evidence of diminished

future earnings due to her inability to continue working at the Hospital.

Furthermore, Harvey clearly mitigated her damages. Harvey obtained

reemployment as a pharmacist within six months of her separation from the

Hospital, during the height of the Coronavirus-19 Pandemic. In fact, the record

demonstrates that Harvey supplemented her income by administering vaccines

even after obtaining reemployment. *C.f.*, *Upchurch*, 214 S.W.3d 920-21 ("Thus,

for the same reason Upchurch is not entitled to back pay after he stopped actively

seeking employment; he is also precluded from receiving front pay; his admission

that he was not actively ready, willing, and available for employment, as a matter

of law, defeats any claim for front pay.").

In summary, the record on appeal establishes that the Hospital

committed a KCRA violation, reinstatement was not requested, Harvey will suffer

future diminished earnings due to her inability to continue her long-time

employment for the Hospital, and Harvey took reasonable steps to mitigate her

damages. Based on this evidence and the relevant authority, the Trial Court did

not act arbitrarily, unreasonably, unfairly, or against sound legal principles in

ruling that Harvey is entitled to front pay as an equitable remedy for the Hospital's past retaliatory actions.

Turning to the amount awarded, we further affirm the Trial Court's Order Awarding Front Pay. The Hospital challenges Harvey's front pay award on the grounds that it is inconsistent not only with the jury's award of damages, but also with calculations that Harvey supplied during the jury trial.

As stated, the jury awarded Harvey a total of $75,000.00 in lost wages and $25,000.00 in lost benefits. We cannot adopt the Hospital's argument that the Trial Court's award of front pay, which is an equitable measure of *future* damages, was limited by the jury's determination of Harvey's *past* damages. Front pay is an equitable award, not a liquidated award. *Preece*, 323 S.W.3d at 369, n.2. The Hospital's contention fails logically, and the authority previously discussed supports the opposite conclusion. *See Macglashan*, 448 S.W.3d at 793-94 (explaining that to make a plaintiff whole, back pay awards a plaintiff for pre-judgment damages and front pay awards a reasonable estimate of damages post-judgment). Even assuming, *arguendo*, that the jury's award is the polestar for the Trial Court's front pay calculation – which it is not – Harvey's front pay award still falls within the bounds of a reasonable calculation.[3]

---

[3] This statement does not lend credence to the Hospital's inference that a jury has the ability to determine a plaintiff's entitlement to, or the amount of, an award of front pay.

There is no guiding authority dictating the precise methodology to calculate an award of front pay. *See Upchurch*, 214 S.W.3d at 920-21 ("[A]n award of front pay is often inherently speculative . . . ."). Thus, the Trial Court was permitted to utilize proof of Harvey's diminished earnings to calculate an award within the bounds of reasonability. To this extent, the record shows that at the time of Harvey's Motion for Front Pay, she faced an additional 13 years of employment before reaching the age necessary to collect full Social Security retirement benefits. Harvey's tax returns, which were entered as exhibits during the jury trial, show that for the 2019 tax year, her last full year of employment at the Hospital, her annual salary was $120,838.00. Following her termination from the Hospital and new employment as a pharmacist, Harvey made an approximate annual salary of $54,218.00, $76,960.00, and $70,887.00 for the tax years 2021, 2022, and 2023, respectively. Obviously, Harvey has sustained a net-pay differential since separation. Regardless of the exact amount of Harvey's annual diminished earnings, the amount of front pay that the Trial Court awarded falls within a reasonable range as supported by the record.

For the sake of argument, this Court will assume the lowest possible net-pay differential as identified by the Hospital – that is, $25,000.00 per year. The Trial Court's award of $200,000.00, therefore, accounts for eight years of future diminished earnings, which is an amount below the 13 years Harvey submits

-13-

she must continue working to reach full retirement. Our reasoning is bolstered by evidentiary support that Harvey's average net-pay differential, which includes the mitigated amounts reflected by her annual reemployment earnings, is $55,952.00 per year. When multiplied by the remaining 13 years that Harvey must work to reach retirement, Harvey's front pay damages arguably exceed $720,000.00. Even more, our notional calculation does not include the record evidence of Harvey's loss of cost-of-living raises, the Hospital's employer-retirement contributions, and the Hospital's employer-sponsored healthcare plan. Considering the Trial Court's front pay award of $200,000.00 reflects a reasonable amount of future damages that Harvey will incur due to the Hospital's KCRA violation, we find that the Trial Court acted within its discretion.

B. Order Awarding Fees-Appeal No. 2024-CA-0993-MR

The Hospital also challenges the Trial Court's Order Awarding Fees in the amount of $101,835.00, representing 254.7 hours of work at a rate of $395.00 per hour for the attorney, and 6.3 hours of work at a rate of $195.00 per hour for the paralegal. The Hospital does not challenge Harvey's entitlement to recover her reasonable attorney's fees pursuant to KRS 344.450, which specifically permits such an award. Instead, the Hospital contests the amount of the Trial Court's award. Similar to the Hospital's argument concerning the Trial Court's Order Awarding Front Pay, the Hospital asserts that the Trial Court abused its

-14-

discretion by entering Harvey's proposed order without conducting the proper legal analysis.[4]   In addition, the Hospital makes several overarching arguments that the Trial Court erred in accepting Harvey's claimed attorney's fees, including the number of hours her attorney charged, his hourly rate, and applicable adjustments to account for unsuccessful claims and clerical, non-legal work.

KRS 344.450 provides that "[t]he court's order or judgment shall include a reasonable fee for the plaintiff's attorney . . . ."  When assessing an award for attorney's fees pursuant to KRS 344.450, a Trial Court must calculate the lodestar figure by multiplying the attorney's hourly rate by the number of hours that the attorney expended in work.  *Asbury Univ. v. Powell*, 486 S.W.3d 246, 265 (Ky. 2016) (citing *Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814, 826 (Ky. 1992)).  This initial calculation also considers the reasonableness of both lodestar variables.  *Id.*  A Trial Court may then adjust the lodestar figure "upward or downward 'for various special factors in the litigation.'"  *Banker*, 466 S.W.3d at 465 (quoting *Meyers*, 840 S.W.2d at 826).  The crux of the analysis is "to place value on the services rendered" in obtaining relief for civil rights violations.  *Hill v. Kentucky Lottery Corp.*, 327 S.W.3d 412, 429 (Ky. 2010).

---

[4] As a threshold issue, the Hospital presents numerous assertions in its Appellant's Brief that the Trial Court was obligated to provide oral or written findings, analysis, or calculations in support of the Order Awarding Fees.  However, in its Reply Brief, the Hospital specifically states that it neither posits that the Trial Court erred in failing to reduce its calculation of fees to writing nor that it was required to render its underlying analysis.  (Reply Brief, p. 2.)

-15-

In addressing the lodestar variables, we first examine the hourly rate of Harvey's attorney, Augustus, and his paralegal, Connie Cruise ("Cruise"). The reasonableness of an attorney's hourly rate is dependent on the prevailing market rate for an attorney with comparable skills and experience. *See Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) (citation omitted). The Hospital submits that Augustus and Cruise charged excessive hourly fees in comparison to the prevailing market rates. Yet, the Hospital failed to supply the Trial Court with evidence or controlling law contradicting Augustus' and Cruise's hourly fees. Harvey, however, filed two affidavits in support of the claimed rates. Specifically, Augustus executed an affidavit attesting to his 26 years of litigation experience and 20 years of employment law experience. Augustus also attested that Cruise has 30 years of paralegal experience. James M. Bolus, Jr. ("Bolus"), also supplied the Trial Court with an affidavit supporting Augustus' hourly fee. Bolus attested to his qualifications as an experienced, employment litigation attorney. Bolus further attested to the complex nature of retaliation cases, Augustus' capability, and the reasonableness of Augustus' hourly billing rate and time expended in litigating the action.

Moreover, although not controlling, Harvey cited a recent, unpublished case of this Court, wherein we affirmed a rate of $575.00 per hour for a comparable Louisville attorney. *Rhodes v. George T. Underhill & Assoc., LLC,*

No. 2022-CA-0340-MR, No. 2022-CA-0342-MR, 2024 WL 737007 (Ky. App. Feb. 23, 2024).

Based on the record and applicable law, we cannot surmise that the Trial Court abused its discretion in concluding that Augustus' and Cruise's billing rates as reasonable. And we do not fault the lack of more analysis either.

The second lodestar variable is the amount of time the attorney charged. The Hospital argues that the Trial Court could not properly assess the amount of hours Augustus expended on litigating Harvey's claims because his billing entries were descriptively vague. In its discretion, the Trial Court accepted Augustus' billed time in full. In our review of Augustus' billing, we find that his time entries properly reflect the dates of service, a short description of the work provided, the time spent performing the work, and amount that he charged. Such "entries are sufficiently detailed so as to allow the trial court to make an assessment as to the reasonableness of the hours requested." *See Walters v. Moore*, 121 S.W.3d 210, 219 (Ky. App. 2003), *as modified* (Nov. 7, 2003); *Middleton v. Commonwealth Bank & Tr. Co*., No. 2021-CA-1035-MR, 2023 WL 3667587 (Ky. App. May 26, 2023) (substantial detail is not always required where the general subject matter of the time expended is expressed sufficiently to identify the tasks performed).

-17-

Furthermore, in light of the ample discovery, the dispositive-motion litigation, mediation, and the three-day jury trial, the Trial Court acted within its discretion in accepting, as reasonable, approximately 261 hours of work. In this same vein, we reject the Hospital's argument that the Trial Court abused its discretion by failing to exclude hours billed for client communications via email and trial preparation, both of which the Hospital refers to as non-legal or clerical work. Although the Hospital raises reasonable arguments to "quibble" over the fees charged, there has been no showing that the Trial Court abused its discretion in finding such work was reasonably incurred in full. *See A & A Mech., Inc. v. Thermal Equip. Sales, Inc.*, 998 S.W.2d 505, 514 (Ky. App. 1999) ("Although there is room to quibble over some of the amounts charged, such as those for trial preparation and post-trial briefing, the invoices adequately support the decision of the trial court upholding the claimed fee. If the trial court's determination is reasonable, the fact that there may be other reasonable conclusions is not a sufficient basis for overturning the award.").

Finally, we address the Hospital's argument that the Trial Court's refusal to apply a downward adjustment to the lodestar amount was an abuse of discretion. The Hospital's adjustment-based claims of error focus on the disproportionate amount of the Order Awarding Fees compared to the jury's award

of damages, in addition to the fact that Harvey did not prevail on many of her claims.

As to the Hospital's first argument, we can find no case law supporting the proposition that an award of fees must be proportional to the amount awarded in compensatory damages. In fact, it appears that our Supreme Court has accepted a different conclusion. *See Hill*, 327 S.W.3d at 429 ("[T]he court should not undertake to adopt some arbitrary proportionate relationship between the amount of the attorney fees and the amount awarded."). Our predecessor Court clarified in *A & A Mechanical, Inc. v. Thermal Equip. Sales, Inc.*, that "[a]lthough the fee award is well in excess of the award of damages, there is no rule requiring strict proportionality between the two." 998 S.W.2d at 514 (citing *Meyers*, 840 S.W.2d at 825).

Also, in *Meyers v. Chapman Printing Company, Inc.*, our Supreme Court affirmed an award of attorneys' fees exceeding $150,000.00 where plaintiff's recovery was limited to $1,316.24 for lost income and $100,000.00 for mental and emotional injuries resulting from a hostile work environment. 840 S.W.2d at 816. The Kentucky Supreme Court specifically approved the Trial Court's statement that it "should not undertake to adopt some arbitrary proportionate relationship between the amount of attorney fees awarded and the

-19-

amount of damages awarded." *Id.* at 825-26. Therefore, absent legal authority to the contrary, the Trial Court did not abuse its discretion in this regard.

The Hospital's second argument is equally unpersuasive under the applicable abuse of discretion standard of review. Harvey's Amended Complaint alleged six causes of action, all based on the same underlying operative facts. Harvey prevailed in her retaliation claim against the Hospital, which required proof intertwined with her other causes of action. We find our Supreme Court's analysis and holding in *Banker* v. *University of Louisville Athletic Association, Inc.* applicable. 466 S.W.3d 456. In *Banker*, the plaintiff pursued claims against her employer and for breach of contract, breach of covenant of good faith and fair dealing, gender discrimination, retaliation, hostile work environment, wrongful discharge, and intentional infliction of emotional distress. *Id.* at 459. The plaintiff voluntarily dismissed several claims following discovery but prior to trial. *Id.* Similar to the facts before this Court here, the jury found for the defendants on all counts except plaintiff's claim of retaliation as to the employer entity. *Id.* The Kentucky Supreme Court held that the Trial Court did not abuse its discretion in denying the defendant's request to adjust the lodestar figure to account for plaintiff's unsuccessful claims because the claims were factually intertwined. *Id.* at 467. Here, there is no legitimate argument that the Trial Court was required to

apply a downward adjustment based on Harvey's unsuccessful claims, which were both factually similar and logically intertwined.

Briefly, we also again address *Meyers*, which both Harvey and the Hospital utilize to further their respective positions. In *Meyers*, the plaintiff received a mixed verdict, wherein the jury found in her favor on a claim of wrongful discharge but not on her discrimination claim. 840 S.W.2d 814. On appeal, the Kentucky Supreme Court reviewed a wide range of adjustments, including an adjustment based on plaintiff's unsuccessful claims and an adjustment regarding the value of services in litigating fees. *Id.* at 825-26. Ultimately, the Kentucky Supreme Court affirmed the Trial Court's various adjustments, illustrating the wide-ranging discretion a Trial Court has in awarding attorneys' fees. *Id.* Importantly, the Supreme Court found that it was entirely appropriate for the Trial Court to adjust the lodestar amount based on the percentage of evidence necessary to prove both claims. *Id.* at 825. As apparent from its acceptance and adoption of Harvey's proposed order without change, the Trial Court found that a downward adjustment was unwarranted. This decision is within the bounds of discretion the Trial Court maintains. *See Hill*, 327 S.W.3d at 429 (explaining that it is within the Trial Court's discretion to award an attorney the value of the time expended "to vindicate the civil rights violations" even if unsuccessful on other

claims). Accordingly, the Trial Court did not abuse its discretion in awarding

Harvey attorney's fees in the amount of $101,835.00.

## **CONCLUSION**

Having found no error, we hereby affirm the Marshall Circuit Court's

Order Awarding Front Pay and Order Awarding Fees.


ALL CONCUR.


BRIEFS FOR APPELLANT:          BRIEF FOR APPELLEE:

Raymond C. Haley, III          Michael A. Augustus
Chantell C. Foley              Louisville, Kentucky
Louisville, Kentucky