**DOLLAR GENERAL PARTNERS,**
Appellant,

v.

**Arney UPCHURCH, Appellee.**

**No. 2005–CA–001703–MR.**

Court of Appeals of Kentucky.

Nov. 3, 2006.

Discretionary Review Denied by Supreme Court March 14, 2007.

Elizabeth S. Washko, Olgetree, Deakins, Nash, Smoak & Stewart, P.S.C., Nashville, TN, for appellant.

Michael A. Rains, Lance W. Turner, Carroll & Turner, P.S.C., Monticello, KY, for appellee.

Before COMBS, Chief Judge; HENRY, Judge; PAISLEY,[1] Senior Judge.

## OPINION

PAISLEY, Senior Judge.

Arney Upchurch filed an action against Dollar General Partners alleging that he was discharged in retaliation for filing a workers' compensation claim in violation of KRS 342.197. The jury returned a verdict awarding $25,000 in back pay and $250,000 in front pay. On appeal, Dollar General raises five issues: (1) that the trial court committed reversible error in denying its motion for a directed verdict; (2) that the trial court erred when it allowed Upchurch's back pay and front pay claims to

---

1. Senior Judge Lewis G. Paisley sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

go to the jury; (3) that the instructions were erroneous; (4) that the award for back pay and front pay were speculative and against the weight of the evidence; and (5) that the trial court erred when it permitted the jury to consider punitive damages.

## EVENTS LEADING TO UPCHURCH'S TERMINATION

In December 1999, Upchurch was hired as the store manager for Dollar General's store in Albany, Kentucky. He earned approximately $420 per week plus yearly bonuses. In 2001, his bonus was $6,500 but Upchurch testified that he anticipated a $10,000 bonus in 2002. His duties included opening and closing the store, preparing work schedules, unloading and stocking merchandise, and supervising employees. Prior to August 2002, there were no complaints made to Dollar General concerning Upchurch's job performance, his yearly job performance reviews were above average, and in January 2002, store sales tripled.

In May 2002, Upchurch sustained a work-related injury to his back. He reported the injury to David Neale, the district manager responsible for the Albany store, and was told to report the injury to Dollar General's Risk Management Department. Shortly thereafter, Upchurch told Neale that he was seeking workers' compensation benefits. Upchurch continued to work until August 2002, when he took a leave of absence to have back surgery.

Because of Upchurch's absence, Neale spent increased time in the Albany store. During this time, he allegedly learned from various employees that Upchurch did not participate in unloading trucks and did not work the required hours to manage the store. He also learned that Upchurch had given a store key to an unauthorized person, Joyce Graham, and that Upchurch had given paid vacation to Rubenia Jarvis, an ineligible part-time employee.[2]

Neale contacted Dollar General's Field Employee Relations Coach, Grace Pena, who instructed him to gather documentation to substantiate the allegations. Neale obtained statements from Brenda Parrigin, the assistant manager, and the "third key", Stephanie Craig, regarding the key given to Graham. Both women stated that Graham was given a key to open and close the store in May 2001. He also received employee statements confirming that Upchurch had given vacation time to Jarvis. Based on that information and after receiving approval from Dollar General's legal counsel, Pena instructed Neale to notify Upchurch that he was terminated. On October 24, 2002, Neale told Upchurch that he was terminated.

## UPCHURCH'S POST–TERMINATION WORK HISTORY

In November 2003, Upchurch began working part-time as a sales representative for the Phillip Morris Company where he earned $8.00 per hour plus mileage. He also worked for his parents' Armco station in exchange for the payment of personal expenses, including his mortgage, utilities, cable bill, and gasoline. He sometimes worked for his cousin's company for which he received merchandise.

2. Pursuant to company policy, store managers are expected to work forty to forty-five hours per week. Personnel records for the year prior to his termination show that Upchurch worked considerably less than that amount, sometimes twenty to twenty-five hours per week. Each Dollar General store has three store keys. Under the company policy, the authorized key holders are the store manager, assistant manager, and the "third" key holder. The Dollar General handbook provides that vacation time is given only to full-time regular employees.

In August 2004, Upchurch left his employment with Phillip Morris and attended college full-time to pursue a degree in radiology. Although he continues to occasionally help his parents and cousin at their businesses, he receives no wages or salary.

## DOLLAR GENERAL'S MOTION FOR A DIRECTED VERDICT

At the close of Upchurch's case, Dollar General moved for a directed verdict arguing that Upchurch failed to prove a causal connection between his workers' compensation claim and his termination and that he failed to demonstrate that the reasons for his termination were pretextual.[3] Its subsequent motion for a judgment notwithstanding the verdict or, in the alternative, remittitur, was denied.

■ The standard of review applicable to a denial of a motion for directed verdict and a judgment notwithstanding the verdict is the same. The appellate court is required to consider the evidence in the strongest light possible in favor of the opposing party. *Taylor v. Kennedy,* 700 S.W.2d 415, 416 (Ky.App.1985). Either motion is properly granted only if there is a "complete absence of proof on a material issue in the action, or if no disputed issue of fact exists upon which reasonable men could differ." *Id.*

■ KRS 342.197(1) states:

No employee shall be harassed, coerced, discharged, or discriminated against in any manner whatsoever for filing and pursuing a lawful claim under this chapter.

A claim under KRS 342.197(1) is subject to the rule that to avoid a directed verdict in a claim for employment retaliation, the plaintiff must first establish a prima facie case. The plaintiff can meet this initial burden by proof that: (1) he engaged in a protected activity; (2) the defendant knew that the plaintiff had done so; (3) adverse employment action was taken; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Brooks v. Lexington–Fayette Urban County Housing Authority,* 132 S.W.3d 790 (Ky.2004). Upchurch filed a workers' compensation claim, an activity expressly protected under KRS 342.197. Dollar General was aware of the claim and Upchurch was discharged; the first three elements of the cause of action were satisfied. Dollar General argues that Upchurch failed to prove a causal connection between the protected activity and the adverse employment action.

■■ The plaintiff is not required to demonstrate that the sole or even the primary reason for the termination was related to the protected activity but only that its pursuit was a "substantial and motivating factor" in the decision to terminate. *First Property Management v. Zarebidaki,* 867 S.W.2d 185 (Ky.1993). Because there is often a lack of direct evidence, proof of a causal connection can be difficult and requires reliance on inference.

In most cases, this requires proof that (1) the decision maker responsible for making the adverse decision was aware of the protected activity at the time that the adverse decision was made, and (2) there is a close temporal relationship between the protected activity and the adverse action. *Brooks, supra.* at 804 (citation omitted).

Dollar General contends that, as a matter of law, the five-month lapse of time be-

---

3. Dollar General's motion was sustained as it related to Upchurch's claim for damages for emotional distress.

tween the reporting of the work injury to Dollar General and the termination does not constitute a "close temporal relationship".

"The sooner adverse action is taken after the protected activity, the stronger the implication that the protected activity caused the adverse action, particularly if no legitimate reason for the adverse action is evident." *Kentucky Department of Corrections v. McCullough,* 123 S.W.3d 130, 135 (Ky.2003), citing Justin P. O'Brien, *Weighing Temporal Proximity in Title VII Retaliation Claims,* 43 B.C. L.Rev. 741, 749 (May, 2002). Although Dollar General cites a string of cases, both state and federal, none purports to establish a time limitation between the protected activity and the termination. *See Bromley v. Parisian, Inc.,* 55 Fed.Appx. 232, 239 (6th Cir.2002); *Richmond v. ONEOK Inc.,* 120 F.3d 205, 209 (10th Cir.1997); *Hughes v. Derwinski,* 967 F.2d 1168, 1174 (7th Cir.1992); *Shaffner v. Westinghouse Elec. Corp.,* 101 N.C.App. 213, 398 S.E.2d 657 (N.C.App.1990). They merely hold that under the facts, the delay was so long that a reasonable inference could not be drawn that the employee's protected activity was a substantial and motivating factor in the decision to terminate. "Close temporal proximity" does not mean that the employee must be terminated within days or even weeks of the filing of a workers' compensation claim. Such a requirement would shield the employer from liability by merely waiting months or even years to terminate the employee. The logical approach is for the court to view the time between the two events in the context of the entire circumstances.

Upchurch was injured in May 2002, but continued to work until August, when he took leave to have surgery. Only five months passed after the filing of the claim and his termination occurred three months after Upchurch took medical leave. It was during this time that Neale made his allegations, told Pena, and the decision was made to terminate Upchurch. Construing the evidence most favorable to Upchurch, Dollar General gathered its evidence to support it pretextual basis for Upchurch's termination. Under the facts, there was a sufficiently close temporal proximity to establish an inference that there was causal connection between the protected activity and the termination.

Once a prima facie case is established, the burden shifts to the defendant to show a non-retaliatory reason for the adverse employment decision. *McCullough,* at 134.

At this point, the case then proceeds with the plaintiff having to meet her initial burden of persuading the trier of fact by a preponderance of the evidence that the defendant unlawfully retaliated against her.

To meet her burden of persuasion, the plaintiff "must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for [retaliation]." Proof that the defendant's non-retaliatory reasons are "unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive".... In other words, a plaintiff's prima facie case plus proof of a pretext may constitute sufficient evidence to survive a motion for a directed verdict. *Id.* (citations omitted).

Dollar General offered proof of its legally legitimate reasons for the termination, including Upchurch's failure to work sufficient hours, keep the store in good condition, unload the trucks, and that he permitted an unauthorized lay away program, gave a key to an unauthorized em-

ployee and vacation time to a part-time employee. If these are the true reasons for Upchurch's termination, his retaliation claim fails.

While far from conclusive, there was sufficient evidence to support the jury's conclusion that Dollar General's reasons were a mere pretext. Pena testified that prior to receiving Neale's information, she had not received any complaints about Upchurch's performance as a manager, the condition of the store, or employee morale at the Albany store. Although reference was made to a "zero tolerance policy", which would cover the alleged violations committed by Upchurch, the employee handbook in effect at the time of Upchurch's termination makes no mention of such a policy. Written notations kept by Pena indicate that she became aware of the allegations against Upchurch in September 2002, only after she instructed Neale to "gather proof and mail it to me before we call and terminate Arney."

As a salaried employee Upchurch was not required to complete time sheets. Upchurch explained his actions concerning the vacation time to Jarvis and the key given to Graham. Jarvis, he testified, was hired as a full-time employee but no longer worked a full forty hours per week, so he took an average of the hours worked and, since she averaged twenty-five hours, gave her twenty-five hours of vacation. He also pointed out that the key was given to Graham in May 2001, prior to David Neale becoming district manager and, consistent with policy, he obtained permission from the prior district manager.

 Based on the evidence, a reasonable jury could have found that Upchurch's termination was based on the filing of his workers' compensation claim and that the gathering of "evidence" by Neale was motivated by the need to find a legally permissible reason to terminate. The jury

could have, and did infer, that the reasons given by Dollar General were pretextual.

## THE AWARD OF BACK PAY

Dollar General contends that Upchurch's medical restrictions preclude him from recovering back pay. Following his surgery, and at the time of his termination, Upchurch was under medical restrictions, including lifting restrictions of a maximum of seven pounds from the floor, thirty pounds from the waist to the shoulder, and twenty pounds from the shoulder to overhead. He was further restricted from carrying thirty pounds and no more than occasional bending, squatting, or sitting.

 A plaintiff in a wrongful termination case is entitled to lost wages only for the periods in which he was ready, willing, and able to work and in which he was physically capable of performing the essential functions of the job he claims was wrongfully denied. *Dunn v. Comcast Corp.,* 781 So.2d 940 (Ala.2000). The most physical aspect of Upchurch's duties was unloading trucks; it was not, however, his primary duty. Pena testified that if the manager was physically unable to assist in the unloading, the job duties were fulfilled if the manager supervised. None of the restrictions placed on Upchurch would prevent him from supervising and even assisting with light items. He was physically capable of performing his essential job functions.

Although we find no error in the submission of the back pay issue to the jury, we find that the jury instructions and the calculation of the maximum amount to be awarded in back pay were erroneous. "Jury Instruction No. 3" provided that if the jury found that Upchurch was wrongfully terminated, back pay could be awarded and provided that:

[T]he gross amount of wages he would have earned from DOLLAR GENERAL CORPORATION during the period between his discharge on October 18, 2002, and November 2003, including "fringe benefits" less any compensation he received from other employment or benefits he could have earned through the exercise of reasonable diligence to secure other employment during that period of time, not exceeding a total award of $26,029.66 for back pay.

Calculating the maximum amount of the award, the trial court multiplied Upchurch's weekly salary by 4.33 for a monthly salary of $1,818.60 and multiplied the number of months from October 2002, until November 2003, when Upchurch became employed at Phillip Morris, for a total of $20,004.60 and then reduced that figure by $3,974.74 representing three months unemployment benefits. $10,000 was added as a bonus Upchurch projected he would have received in 2002. No reduction was taken for the $3,540 paid in workers' compensation benefits. The jury awarded $25,000.

The initial flaw in the trial court's calculation and consequently, in the instruction, is the use of the November 2003 date. Both parties tendered instructions stating that the back pay award should include the period from the date of termination until the date of trial; the court, however, erroneously used the date when Upchurch became employed by Phillip Morris.

■■■ The date when back pay ends and front pay begins has significance in regard to the roles of the jury and the court. Back pay includes all damages incurred as a result of the wrongful termination until the date of trial and is distinctively different from front pay. The former compensates the terminated employee for compensation lost until trial, while front pay is awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement. *Brooks, supra* at 806. Considered an equitable remedy, whether front pay should be awarded and if so, the amount, are issues for the trial court and not the jury. *Id.*

■■■ Although Upchurch became employed by Phillip Morris in November 2003, it was a part-time job and he made substantially less than he did while in Dollar General's employ. Thus, while amounts earned during his employment with Phillip Morris must be deducted, amounts awarded from the date of his termination until the date of trial, May 11, 2005, are properly considered back pay.

Dollar General contends that Upchurch is not entitled to compensation during any period in which he failed to actively seek employment, including that period after August 2004, when he attended school. Thus, if Dollar General's assertion is legally correct, Upchurch is precluded from recovering benefits after the date he left his employment with Phillip Morris.

■■■ Following his termination, Upchurch was required to mitigate his damage by exercising reasonable diligence to secure other comparable work. *Lewis v. Bledsoe Surface Mining Company,* 798 S.W.2d 459 (Ky.1990). To recover damages during any period following his termination, he must have been ready, willing and available for employment substantially equivalent to the position he lost. *See Miller v. Marsh,* 766 F.2d 490, 492 (11th Cir.1985).

■■■ Attending school after being wrongfully terminated is often an effort to enhance employment opportunities. The question that arises in the context of wrongful termination cases, however, is whether that effort satisfies the plaintiff's responsibility to mitigate damages. Al-

though there is no Kentucky case with similar facts, the federal courts have addressed this issue. In *Miller*, the court held that the plaintiff was properly denied back pay after she enrolled in law school and voluntarily removed herself from the employment market. The plaintiff, the court emphasized, did not actively seek employment and to permit her to reap the benefit of earning her law degree and back pay for that same period would be a double recovery.

> [W]hen an employee opts to attend school, curtailing present earning capacity in order to reap greater future earnings, a back pay award for the period while attending school also would be like receiving a double benefit. *Id.* at 492, quoting *Taylor v. Safeway Stores, Inc.*, 524 F.2d 263 (10th Cir.1975).

We agree that the pursuit of an education is not sufficient to meet the duty to mitigate damages; it does not, however, necessarily preclude an award. The issue is not whether the plaintiff returned to school but whether during the time he was enrolled in school, he continued to be ready, willing, and available to accept employment.

In *Hanna v. American Motors Corp.*, 724 F.2d 1300 (7th Cir.1984), the court held that the plaintiff's return to work was not to "reap greater future earnings" but because, after an unsuccessful job search, it was a means of receiving veterans benefits and, at all times, he used reasonable diligence to obtain comparable employment. He sought employment for four months before enrolling in school and, while enrolled, continued to apply for various jobs. After his first semester, he left school and continued his employment search for another nine months before again returning to school. The return to school, the court found, was a better alternative than unemployment.

The facts in this case are strikingly different than those in *Hanna*. After Upchurch left his employment with Phillip Morris, he chose to withdraw himself from the workforce to pursue an education program which would increase his future earning capacity. The duty to mitigate damages will not permit recovery for the wages lost during the period when he made a voluntary choice to be unemployed. Thus, upon remand, Upchurch is entitled to back pay up to and including the date he no longer actively sought employment.

We also find error in the additions and deductions the trial court made from Upchurch's base salary. It added $10,000 to Upchurch's back pay as an anticipated bonus in 2002. In *Maggard v. Commonwealth, Cabinet for Families and Children*, 991 S.W.2d 659 (Ky.App.1998), the court denied the recovery of back pay for an amount above the employee's base salary. The amount of overtime was dependent on the availability of work and the employee's willingness to work. Because the employee was not vested with any legally enforceable right to earn overtime pay, any such award was impermissibly based, in part, on speculation and conjecture. *Id.* at 661. Likewise, there was no guarantee that Upchurch would receive a certain amount or that he would receive yearly bonuses at all; the $10,000, therefore, should have been excluded from the damage award.

The court deducted $3,974.74 for unemployment benefits received representing three months of benefits paid. Dollar General contends that the amount should be that received for nine months. Upchurch did not file a cross-appeal challenging the trial court's deduction for unemployment benefits; this court, however, has previously approved the deduction of such benefits. Under KRS 341.415(1), the

unemployment commission is entitled to seek recoupment of any benefits paid in weeks for which a person later receives a back pay award. Thus, whether the reduction is taken from the award or benefits are recouped by the state, the terminated employee is not entitled to a double recovery. *Simpson County Steeplechase Association, Inc. v. Roberts,* 898 S.W.2d 523, 528 (Ky.App.1995).

Although the entire amount of benefits received should have been deducted, we find that there was evidence to support the trial court's deduction. Upchurch testified on direct that he received benefits for three months but on cross-examination ambiguously stated that he received benefits for six to nine months. Despite this inconsistency, Dollar General did not produce any records which would conclusively establish the amount received; the trial court, therefore, did not abuse its discretion in deducting only $3,974.74.

■ We likewise find no error in the trial court's failure to deduct the workers' compensation benefits paid. Whether the employer is entitled to credit for the workers' compensation benefits paid was decided in *Hardaway Management Company v. Southerland,* 977 S.W.2d 910 (Ky.1998). Holding that the employer is entitled to credit, the court stated:

> [W]orkers' compensation benefits in Kentucky are not intended as damages for injuries, but as compensation for

wages lost or anticipated to be lost in the future. . . . Hardaway was entitled to credit against Southerland's judgment for the temporary total disability benefits paid to her while she was unable to work. Those benefits represented compensation for wages lost during an identical period for which the jury awarded her damages for "back pay and income lost." *Id.* at 918–919 (citations omitted). The $3,540 paid to Upchurch, however, was paid for the ten weeks prior to his termination when he was on medical leave from work. Under the circumstances, it was proper not to deduct the workers' compensation benefits.[4]

## THE AWARD OF FRONT PAY

■ The trial court submitted the front pay award to the jury and Upchurch was awarded $250,000.[5] As we have previously stated, the issue of front pay should not have been submitted to the jury. *Brooks, supra.* Because an award of front pay is often inherently speculative, the preferred remedy is reinstatement and, if requested, the logical remedy.[6] Upchurch, however, does not request that the court order reinstatement; we, therefore, give that remedy no further consideration.

■ Although the jury found that Upchurch was wrongfully terminated, he is not automatically entitled to front pay. The purpose of front pay is limited to compensating the employee for wages lost as a result of the wrongful termination.

---

4. In *Hardaway,* the court distinguished a lump sum settlement for permanent partial disability. "A worker can be entitled to permanent partial disability benefits even if he or she has sustained no immediate loss of earnings, but has sustained an impairment of future earning capacity." *Id.* at 919 (citation omitted). In that case there was not an award for future lost earnings.

5. $250,000 is twelve and one-half years of Upchurch's $20,000 yearly salary.

6. Reinstatement is not a desirable remedy in all instances such as where there is hostility between the employer and terminated employee, the employee has found other work, or where reinstatement would require displacement of a non-culpable employee. *See Roush v. KFC National Management Company,* 10 F.3d 392, 398 (6th Cir.1993).

*Roush v. KFC National Management,* 10 F.3d 392 (6th Cir.1993). Thus, for the same reason Upchurch is not entitled to back pay after he stopped actively seeking employment, he is also precluded from receiving front pay; his admission that he was not actively ready, willing, and available for employment, as a matter of law, defeats any claim for front pay. *Hanna, supra; Miller, supra; Lewis, supra.*

## THE PUNITIVE DAMAGE INSTRUCTION

The trial court submitted the issue of punitive damages to the jury. Although no award was made, Dollar General contends that it was nevertheless prejudiced and that the instruction influenced the jury to award an excessive amount for front pay.

KRS 342.197(3) provides that an individual claiming to have suffered retaliation for asserting a workers' compensation claim can recover "actual damages." Construing similar language contained in KRS 344.450, in *McCullough,* the court held that punitive damages are not recoverable under KRS 344.450 which, like KRS 342.197, provides that only "actual damages" may be recovered. "Actual damages", the court held, does not include punitive damages. *Id.* at 139.

While it was error to submit the punitive damage instruction to the jury, because no front pay is to be awarded, any prejudice is remedied.

## CONCLUSION

We find no error in the jury's finding that Upchurch was wrongfully terminated from his employment with Dollar General. We find error, however, in the calculation of the back pay and the award of front pay. On remand, the court is instructed to determine, consistent with this opinion, that amount which will compensate Up-

church as a direct result of his wrongful termination up until he no longer actively sought employment. The award of front pay is reversed and, on remand, there shall be no front pay award.

ALL CONCUR.