RENDERED: SEPTEMBER 26, 2019
TO BE PUBLISHED

# Supreme Court of Kentucky

FINAL

DATE 10/22/19 JAF

2018-SC-000292-DG

RICK BENNINGFIELD, INDIVIDUALLY AND      APPELLANTS
IN HIS OFFICIAL CAPACITY AS TAYLOR
COUNTY JAILER; EDDIE "HACK"
MARCUM, INDIVIDUALLY AND IN HIS
OFFICIAL CAPACITY AS TAYLOR COUNTY
JAILER; TAYLOR COUNTY FISCAL COURT;
EDDIE ROGERS, TAYLOR COUNTY JUDGE
EXECUTIVE; JAMES JONES,
MAGISTRATE; JOHN GAINES,
MAGISTRATE; TOMMY CORBIN,
MAGISTRATE; MATT PENDLETON,
MAGISTRATE; ED GORIN, MAGISTRATE;
AND RICHARD PHILLIPS, MAGISTRATE


ON REVIEW FROM COURT OF APPEALS
V.      CASE NO. 2015-CA-001975
TAYLOR CIRCUIT COURT NO. 13-CI-00144


JERRY FIELDS      APPELLEE


## OPINION OF THE COURT BY JUSTICE KELLER

## AFFIRMING IN PART, REVERSING IN PART AND REMANDING

In this wrongful termination case, the Taylor Circuit Court granted

summary judgment in favor of Rick Benningfield, individually and in his official

capacity as Taylor County Jailer; Eddie "Hack" Marcum, individually and in his

official capacity as Taylor County Jailer; Taylor County Fiscal Court; Eddie

Rogers, Taylor County Judge Executive; James Jones, Magistrate; John Gaines, Magistrate; Tommy Corbin, Magistrate; Matt Pendleton, Magistrate; Ed Gorin, Magistrate; and Richard Phillips, Magistrate. The Court of Appeals reversed, holding that KRS 342.197 constitutes a waiver of sovereign immunity against a governmental employer and that genuine issues of material fact existed, thereby precluding summary judgment. Having reviewed the record and the applicable law, we now affirm in part and reverse in part.

## I. BACKGROUND

On October 23, 2008, Jerry Fields was hired as a deputy jailer with the Taylor County Detention Center (hereinafter, the "Jail"). His effective date of employment was November 1, 2008. At that time, Rick Benningfield served as the Taylor County Jailer.

On June 11, 2009, Fields tore the rotator cuff of his right shoulder while attempting to restrain an inmate. Surgery to repair the tear took place in August 2009. Several months later, Fields's doctor informed him that there was a second deeper tear in the same shoulder and recommended a second surgery. After consulting with specialists and determining that his chance of improvement was slight, Fields declined to undergo this additional surgery. His doctor released him to perform only light duty work and restricted his lifting to twenty pounds or less, with no repetitive or overhead work and no use of power tools that vibrated. He was also directed to avoid those combat or restraint situations typically associated with the work of a corrections officer. Chief Deputy Jailer Kevin Wilson informed Fields that no such light duty work

was available. Fields was never released to return to regular work and his restrictions are permanent.

During Fields's medical leave, he was required to regularly update his employer on his medical status. Wilson testified at his deposition that he believed Fields came to the Jail on a couple of occasions after his injury, but Wilson could not recall speaking with Fields. Benningfield testified at his deposition that he could recall Fields visiting the Jail "a couple times" after his injury. He testified that he would contact Sherry Kerr, an employee with the county judge's office who typically handled the medical excuses, on a monthly basis to check on Fields's status.

Fields, on the other hand, testified at his deposition that he visited the Jail after every doctor's visit and informed Benningfield and Wilson of his status. According to Fields, during the last two or three visits prior to his termination, he felt he was not welcome at the Jail. For example, he recalled one conversation in which Benningfield informed Fields that he would love to fire him but he could not do so because Fields was receiving workers' compensation. During that conversation, Benningfield noted that he was forced to fill Fields's position with part-time employees. Fields also referenced an earlier conversation with Wilson about Fields's demotion from sergeant to deputy. Fields had been promoted to sergeant in April 2009 for a probationary period and with a deputy's pay rate. After his injury, he was informed by Wilson that the Jail had decided to keep him as a deputy, rather than a sergeant. According to Fields, Wilson explained that he could do this because

3

"I'm sitting here and you're sitting over there. I can do this." Fields also testified that the Jail stopped calling to check on him once it became known that he required surgery.

Fields's medical leave expired on March 10, 2010. Chief Deputy Wilson testified at his deposition that he was contacted on that date by Kerr, the employee who typically handled the medical excuses. Kerr notified Wilson of Fields's expired medical excuse and her unsuccessful attempts to contact Fields. She asked if Wilson had attempted to contact Fields, and Wilson replied that it was not his job to track down Fields and he was ready to terminate him. The Jail then sent a notice of termination letter to Fields, dated March 15, 2010 and signed by Wilson. The letter was sent via U.S. Mail (first class). The body of the letter stated, in full:

Notice of Termination effective as of 3/10/2010
1. Doctors excuse expired as of 03-10-2010
2. FMLA leave[:] you are not eligible for this because You [sic] had not worked 1 year prior to leave starting.
3. Cervical neck injury you are claiming as your injury At [sic] this time is not related to the shoulder Injury [sic] that workman comp. claim started with
4. No attempt has been made to contact the Taylor County Detention Center
5. Failure to contact employer on status of injury
This letter is also to inform you that your health insurance, Dental and life insurance will expire on 03-31-2010.
Any further questions need to be addressed to the County Attorney.

After receiving the letter on March 20, 2019, Fields contacted the County Judge Executive, Eddie Rogers. Rogers referred Fields to Benningfield and the county attorney. Fields did not follow up with Benningfield or the county attorney, but instead spoke with Wilson, who reiterated the reasons for

4

termination cited in the letter. Wilson also referred Fields to the county attorney, but Fields did not speak with the county attorney, nor did Fields request a hearing to dispute his termination.[1]

Fields received workers' compensation for his injuries, and that claim was settled in 2011. Fields then filed suit against Appellants in the United States District Court for the Western District of Kentucky, alleging Fourteenth Amendment due process violations, as well as wrongful termination and retaliation claims arising under state law. *See Fields v. Benningfield*, 2012 WL 5497918 (W.D. Ky. Nov. 13, 2012). The District Court granted summary judgment for the defendants in that case. That court dismissed the due process claim, noting that Fields had been adequately notified of the charges against him and his right to request a hearing. However, the court declined to exercise jurisdiction over the remaining state law claims. It therefore dismissed the due process claim with prejudice and dismissed the state law wrongful termination and retaliation claims without prejudice. The Court of Appeals for the Sixth Circuit affirmed this decision.

Fields then filed the present suit in Taylor Circuit Court on April 12, 2013. His complaint alleged that he had been denied a pre-termination hearing, resulting in due process violations arising under state constitutional and statutory law. He also alleged that he had been wrongfully terminated

---

[1] Information about the right to request a hearing was provided in the policies and procedures of the Taylor County Fiscal Court and the Taylor County Detention Center. Fields testified in his deposition that he recalled receiving copies of both.

5

without cause in violation of KRS 71.060.[2]  Lastly, Fields alleged that the appellants violated KRS 432.197 by harassing, coercing, or discriminating against him for pursuing a workers' compensation claim.

Having already conducted significant discovery in the federal suit, defendants filed a Motion for Summary Judgment on April 2, 2014.  The matter was heard before the trial court on June 17, 2014.  The parties raised the matter again during a case management conference on September 15, 2015.  At that time, the trial judge referenced Fields's alleged failure to stay in touch with the Jail and found that this precluded him from recovering "on his employment claim."  In a one-page Order dated November 23, 2015, the trial court granted the defendants' Motion for Summary Judgment, briefly explaining that "there are no genuine issues as to any material facts and that the Defendants are entitled to judgment in their favor dismissing all claims against any of them for the reasons asserted in the record."

Fields appealed.  In the briefs to the Court of Appeals, the parties addressed each of Fields's three claims (due process violation, wrongful termination, and retaliation).  However, the Court of Appeals determined that "[a]ll constitutional due process claims, whether they were asserted under federal or state law, have been resolved in favor of appellees [now, the appellants] in accordance with the federal decisions."  Beyond this apparent *res*

---

[2] Under KRS 71.060(2), "[t]he jailer shall be responsible for the appointment and removal of jail personnel, and the jailer may dismiss his deputies at any time with cause." Fields also cites to KRS 61.310, which governs the compensation of peace officers, and KRS Chapter 441, which governs jails and county prisoners.

6

*judicata* holding, the Court of Appeals did not discuss these due process claims. The parties did not seek rehearing of those issues, nor did either party seek discretionary review of the Court of Appeals' holding on these claims. Accordingly, the due process claims are not before this Court.

Furthermore, the Court of Appeals did not address Fields's wrongful termination claim. That claim is listed as Count II in Fields's initial complaint and allegedly arises under KRS 71.060 and other statutory law. In other words, the wrongful termination claim alleges that Fields was fired without cause, and there is no reference to KRS 342.197 under Count II. The only reference to KRS 342.197 lies within Count III, Fields's retaliation claim. Nevertheless, the Court of Appeals concluded "that only one viable issue has been raised on appeal, namely whether [Fields's] employment was terminated for filing a workers' compensation claim in violation of KRS 342.197." It then referred to this claim as an "Employment Wrongful Termination Claim – KRS 342.197." Thus, the Court of Appeals did not address Fields's wrongful termination claim *arising under KRS 71.060.* However, neither party sought rehearing of that issue, nor did either party seek discretionary review of that issue. Accordingly, the wrongful termination claim under KRS 71.060 and other statutory law is not before this Court.

Regarding the retaliation claim, the Court of Appeals held that (1) KRS 342.197 implicitly waived immunity for government entities and officials and (2) summary judgment was inappropriate because various disputed facts existed that could have established a violation of KRS 342.197. We granted

7

discretionary review of these issues. As noted above, these are the only issues before this Court.

## II. ANALYSIS

### A. KRS 342.197 implicitly waives immunity for governmental employers.

Sovereign immunity "is an inherent attribute of a sovereign state that precludes the maintaining of any suit against the state unless the state has given its consent or otherwise waived its immunity." *Yanero v. Davis*, 65 S.W.3d 510, 517 (Ky. 2001) (citation omitted). However, under Section 231 of the Kentucky Constitution, "[t]he General Assembly may, by law, direct in what manner and in what courts suits may be brought against the Commonwealth." Thus, the General Assembly can enact laws waiving the sovereign immunity of the Commonwealth. However, in *Withers v. Univ. of Kentucky*, 939 S.W.2d 340 (1997), we held, "We will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Id.* at 346 (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171 (1909)). On appeal, we review this issue *de novo*, as the question "of whether a defendant is entitled to the defense of sovereign or governmental immunity is a question of law." *University of Louisville v. Rothstein*, 532 S.W.3d 644, 647 (Ky. 2017) (citations omitted).

There does not appear to be any dispute that Taylor County Fiscal Court, as the employer, is a government entity entitled to sovereign immunity. Rather, the question is whether KRS 342.197 waives immunity for such

8

government employers. The statute does not *expressly* waive immunity. It simply states, in pertinent part, "No employee shall be harassed, coerced, discharged, or discriminated against in any manner whatsoever for filing and pursuing a lawful claim under this [Workers' Compensation] chapter." KRS 342.197(1).

Nevertheless, the Court of Appeals found an implicit waiver of immunity, relying primarily on *Department of Corrections v. Furr*, 23 S.W.3d 615 (Ky. 2000). In that case, this Court found that the Commonwealth had waived sovereign immunity for claims brought under the Kentucky Civil Rights Act ("KCRA"). In reaching that conclusion, the Court first looked to the plain language of the KCRA. It explained that the KCRA made it an "unlawful practice for an employer" to discriminate on the basis of race, color, religion, national origin, sex, age, disability, or status as a smoker. KRS 344.040(1)(a). The KCRA then defined "employer" as "a person" who has a certain number of employees in the state. KRS 344.030(2). Person, in turn, included "the state, any of its political or civil subdivisions or agencies." KRS 344.010(1). Because the state is specifically identified as an employer who is prohibited from discriminating against its employees under the KCRA, the Act waived sovereign immunity by overwhelming implication. *Furr*, 23 S.W.3d at 617. The Court also noted that immunity "frustrates the act's purpose and intent, deprives many of its citizens of protection, and renders meaningless its pledge to safeguard *all individuals* from discrimination." *Id.*

The Court of Appeals followed a similar analysis in the present case. It first considered the plain language of KRS 342.197 and the definitions provided for KRS Chapter 342. For example, KRS 342.640(3) provides that "[e]very person in the service of the state or any of its political subdivisions or agencies, or of any county, . . . under any contract of hire, express or implied, and every official or officer of those entities . . . while performing his official duties shall be considered an employee of the state." Thus, under KRS 342.640(3), Fields is an employee for purposes of that chapter, which includes KRS 342.197. Taylor County is an employer, which is defined by KRS 342.630(2) as "[t]he state, any agency thereof, and each county." Such employers are "mandatorily subject to, and required to comply with, the provisions of" KRS Chapter 342. *See* KRS 342.630. Taylor County is therefore required to comply with the statute.

The Court of Appeals then turned to the plain language of KRS 342.197. The statute clearly provides that "[n]o employee shall be harassed, coerced, discharged, or discriminated against in any manner whatsoever" for pursuing a Workers' Compensation claim. If an employee suffers such adversity, he or she "shall have a civil cause of action in Circuit Court to enjoin further violations, and to recover the actual damages sustained by him, together with the costs of the law suit, including a reasonable fee for his attorney of record." KRS 342.197(3). The statute makes no exception for government employers, and such employers are clearly included within the definition of "employer" provided in KRS 342.630(2).

10

Based on this plain language and the overall structure of Chapter 342, the Court of Appeals concluded that "the General Assembly did not intend to leave government employees without a recourse upon being wrongfully terminated from employment for filing a workers' compensation claim due to some form of government immunity." Accordingly, the Court of Appeals held that immunity for government employers had been waived by overwhelming implication for claims brought pursuant to KRS 342.197. It explained, "Any contrary conclusion would render the protections of KRS 342.197 afforded to government employees in Kentucky to be meaningless."

We agree with the Court of Appeals' analysis. Accordingly, we hold that KRS 342.197 implicitly waives immunity for those governmental employers accused of violating the statute. However, under the analysis set forth above, the waiver applies only to the complainant's *employer*. Fields named several individuals as defendants in this suit, but of those defendants, only Taylor County Fiscal Court qualifies as his employer. Benningfield and Marcum are entitled to the same immunity, to the extent they are sued in their official capacities, and the waiver therefore applies to them, as well. *See Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). Thus, in the present case, KRS 342.197 implicitly waives immunity for Taylor County Fiscal Court, Rick Benningfield in his official capacity, and Eddie "Hack" Marcum in his official capacity.

Appellants argue that the remaining individual appellants are shielded by qualified governmental immunity. However, with the exception of Rick Benningfield, we need not reach that issue. For the reasons set forth below, we

11

find that summary judgment was appropriate for each of the individual appellants (except Rick Benningfield) because there are no facts demonstrating their involvement in Fields's termination.

## B. The trial court erred in awarding summary judgment on Fields's retaliation claim against Fields's employer, but it was appropriate to award summary judgment in favor of the remaining individual defendants.

Having determined that Fields's retaliation claim was not barred by the doctrine of sovereign immunity, we must now consider whether summary judgment was appropriate. In doing so, we consider whether the trial court correctly found that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kentucky Rule of Civil Procedure ("CR") 56.03; *see also Pearson ex rel. Trent v. Nat'l Feeding Sys., Inc.*, 90 S.W.3d 46, 49 (Ky. 2002). When considering this question, we are mindful that summary judgment is only proper when "it would be impossible for the respondent to produce any evidence at the trial warranting a judgment in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). We review *de novo* the trial court's grant or denial of a motion for summary judgment. *Caniff v. CSX Transp., Inc.*, 438 S.W.3d 368, 372 (Ky. 2014) (citation omitted).

In Kentucky, claims of retaliation involve a burden-shifting approach. First, the complainant must establish a prima facie case of retaliation. To do so, the employee must demonstrate that "(1) he engaged in a protected activity; (2) the defendant knew that the plaintiff had done so; (3) adverse employment

12

action was taken; and (4) that there was a causal connection between the protected activity and the adverse employment action." *Dollar Gen.Partners v. Upchurch*, 214 S.W.3d 910, 915 (Ky. 2006) (citing *Brooks v. Lexington–Fayette Urban Cnty. Hous. Auth.*, 132 S.W.3d 790 (Ky. 2004)). The complainant need not prove "that the sole or even the primary reason for the termination was related to the protected activity but only that its pursuit was a 'substantial and motivating factor' in the decision to terminate." *Id.* (citing *First Prop. Mgmt. v. Zarebidaki*, 867 S.W.2d 185 (Ky. 1993)).

Once a prima facie case is shown, the burden then shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action. *Id.* at 916. If the employer can provide a legitimate explanation, the burden then shifts back to the employee to demonstrate that this reason was merely a pretext for retaliation. *Id.* (citing *Kentucky Dept. of Corrections v. McCullough*, 123 S.W.3d 130, 134 (Ky. 2003)).

In the present case, Fields filed a workers' compensation claim, a protected activity under KRS 342.197, his employer knew he had pursued that claim, and Fields was terminated. He therefore demonstrated the first three elements of a prima facie retaliation claim. Like the *Dollar Gen.Partners* case cited above, this case centers on whether Fields can prove the final element of his claim (a causal connection) and, if so, whether he can demonstrate that the Jail's reasons for termination were pretextual.

The Court of Appeals held that various facts could have supported Fields's retaliation claim. For example, the Court of Appeals referenced: (1)

13

Fields's testimony that he visited the Jail after each doctor's visit; (2) Benningfield's alleged comment to Fields that he wanted to fire him but could not because Fields was receiving workers' compensation benefits; (3) Chief Deputy Wilson's decision to send a notice of termination letter (effective five days prior to the date of the letter) rather than a notice of *intent* to terminate; (4) the fact that Fields was the only Jail employee at that time to be notified of his termination by letter; (5) Wilson's lack of personal knowledge of many of the allegations in the letter; (6) Benningfield's testimony that Fields was the first Jail employee under his watch to need time off for a serious work-related injury; (7) Benningfield's and Wilson's avoidance of Fields and the lack of phone calls from the Jail after it became known that Fields would require surgery. In other words, these facts, if proven, could lead a jury to believe that Fields's pursuit of workers' compensation benefits was a "substantial and motivating factor" leading to his termination and the reasons proffered by his employer were merely pretextual.

Having reviewed the record, we agree. In addition to the facts cited by the Court of Appeals, the following facts could support Fields's claim. First, within days of his injury, Fields was demoted from sergeant to deputy, meaning he was no longer going to receive a pay raise.[3] He also alleges that he no longer felt welcome in the Jail after his injury. Furthermore, the chief deputy jailer made no attempt to contact Fields when his final medical excuse expired

---

[3] While serving as a sergeant, Fields continued to receive the pay of a deputy due to budget constraints. However, he expected that he would eventually be paid at a sergeant's rate.

14

and was ready to terminate as soon as he learned of its expiration. A jury presented with these facts could reasonably find in favor of Fields. To be clear, we do not hold that these facts unequivocally demonstrate that the employer retaliated against Fields for filing a workers' compensation claim; we only hold that it would be possible for Fields to present evidence at trial warranting a judgment in his favor. Summary judgment was therefore inappropriate.

However, there are no allegations of any wrongdoing on the part of Eddie Rogers, James Jones, John Gaines, Tommy Corbin, Matt Pendleton, Ed Gorin, or Richard Phillips. In fact, in his deposition, Fields was asked what action these individuals had taken or failed to take with respect to Fields's complaints. He answered, "I could say they had nothing to do with my termination." In addition, there are no allegations of wrongdoing of the current Taylor County Jailer, Eddie "Hack" Marcum, in his individual or official capacity. Because it is undisputed that these individuals had no involvement in the termination of Fields, summary judgment was appropriate as to these individuals.

### C. Rick Benningfield, in his individual capacity, is shielded by qualified official immunity.

Having concluded that summary judgment was appropriate for Rogers, Jones, Gaines, Corbin, Pendleton, Gorin, Phillips, and Marcum (in both his individual and official capacities), we must next consider whether the remaining individual defendant, Benningfield, is shielded by the doctrine of qualified official immunity.

15

When government employees like Benningfield are sued in their individual capacities, they "enjoy only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment." *Yanero*, 65 S.W.3d at 522 (citations omitted). This doctrine shields public officers and employees from liability for the negligent performance of "(1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority." *Id.* (citations omitted). If an employee demonstrates that the act in question was discretionary and within the scope of his or her employment, the burden shifts to the complaining party to prove that the act was not performed in good faith. *Id.* at 523 (citing *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991), *as modified by, Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146 (6th Cir. 1995)).

In the present case, Benningfield clearly satisfies the first and third prongs of the qualified immunity analysis. He is accused of terminating Fields's employment because Fields sought workers' compensation benefits. The decision to hire or discharge an employee is typically considered to be a discretionary act subject to qualified official immunity. *See generally id.* at 528. In addition, these discretionary decisions fall squarely within the scope of Benningfield's role as the Jailer.

Having concluded that the first and third prongs of a qualified immunity analysis have been satisfied, we turn to the remaining element of good faith.

16

We have previously explained that this good faith component has both objective and subjective aspects. *Yanero*, 65 S.W.3d at 523 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982)). Good faith has often been defined by identifying the circumstances in which qualified immunity is not available, namely, when bad faith is shown. In defining bad faith, we have stated,

> "[B]ad faith" can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position, *i.e.*, objective unreasonableness; or if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive.

*Id.* at 523.

As noted above, the burden rested on Fields to demonstrate that Benningfield, in his individual capacity, acted in bad faith. However, we conclude that there is no evidence in the record to demonstrate bad faith on the part of Benningfield in his individual capacity. First, there is nothing to suggest that he willfully or maliciously intended to harm Fields or acted with a corrupt motive. At most, Benningfield stated that he wanted to fire Fields but felt that he could not do so because Fields had sought workers' compensation benefits. This would suggest that Benningfield wanted to fire Fields for other reasons—namely, the necessity of hiring part-time workers to cover Fields's position—but that he would not do so because he did not want to violate KRS 342.197.

The above statement also suggests that Benningfield was aware of Fields's rights under the statute. However, there is no evidence that

17

Benningfield, in his *individual* capacity, terminated Fields in violation of that statute. For example, Chief Deputy Wilson, not Benningfield, made the decision to terminate Fields after learning that his medical excuse expired. Benningfield testified at his deposition that Wilson had the authority do so, "in case [Benningfield] wasn't around." Thus, while Benningfield may have delegated this authority to Wilson, there is no evidence suggesting that Benningfield, as Wilson's supervisor, influenced Wilson's decision to terminate Fields. In fact, under Wilson's version of events, he did not know if Benningfield was in town at the time he learned of the expired medical excuse, and he did not consult with Benningfield prior to issuing the termination letter. Under these facts, we cannot find bad faith on the part of Benningfield. We therefore find that the second prong of the qualified immunity analysis has been satisfied.

Accordingly, the act in question was discretionary in nature, made in good faith, and within the scope of Benningfield's employment as Taylor County Jailer. The doctrine of qualified official immunity therefore applies and shields Rick Benningfield, in his individual capacity, from liability for Fields's retaliation claim. Thus, it was appropriate to grant summary judgment for Rick Benningfield in his individual capacity.

### III. CONCLUSION

For the reasons set forth above, we affirm the Court of Appeals' holding that KRS 342.197 constitutes an implied waiver of sovereign immunity for governmental employers. We also affirm the Court of Appeals' holding that disputed issues of material fact exist on Fields's retaliation claim against

18

Appellants Taylor County Fiscal Court and Rick Benningfield in his official capacity.

However, it is undisputed that Fields's allegations do not involve Appellants Eddie Rogers, James Jones, John Gaines, Tommy Corbin, Matt Pendleton, Ed Gorin, Richard Phillips, or Eddie "Hack" Marcum (in his individual or official capacities). Because we conclude that no material facts remain in dispute as to the involvement of these appellants, we reverse that part of the Court of Appeals decision that holds summary judgment was inappropriate for these individuals.

Furthermore, we hold that Rick Benningfield is entitled to qualified official immunity under the facts of this case, and therefore, we also reverse the Court of Appeals' decision to the extent it holds summary judgment was inappropriate for Benningfield in his individual capacity.

Accordingly, this matter is remanded to the trial court on Fields's remaining retaliation claim arising under KRS 342.197 against Taylor County Fiscal Court and Rick Benningfield, in his official capacity as the former Taylor County Jailer.

All sitting. All concur.

COUNSEL FOR APPELLANTS:

Arden Winter Robertson Huff
Attorneys Services of Kentucky, PLLC


COUNSEL FOR APPELLEE:

Larry Duane Ashlock
Ashlock Law Group